WALKER v. WESTERN UNION TEL. CO.

1. EVIDENCE—TELEGRAPH COMPANIES.—In suit for failure to deliver a telegram, informing father of dangerous illness of his son, and requesting him to come, length of time body was kept after death, and failure of father to accompany body, may be considered as in the minds of the parties when message was received.

2. IBID.—IBID.—That the addressee of a message received in unintelligible form tried to telephone, but could not, because the wires were down, is responsive to allegation in answer that addressee did not use all means in his power to reduce damages.

3. NONSUIT.—There being evidence *pro* and *con* as to when the addressee of a telegram could have reached a particular place, if message had been promptly delivered, in proper form, nonsuit properly refused.

4. WANTONNESS.—Jury may infer wantonness from failure of carrier to correct error in message upon request to have it repeated and from uncertainty in determining exactly, when, where, how and by whom the message was changed.

5. CONTRACTS—MENTAL ANGUISH—TELEGRAPH COMPANIES—JURY.—When a message from this State to be delivered in Louisiana is not delivered as written, and upon request to correct, the evidence shows that the mistake in repeating occurred at initial office, addressee may recover damages for mental anguish without pleading and proving that the common law rule as to mental anguish has been changed in that State. The question, where was the message changed, is for jury.

6. NONSUIT should not be granted because the failure to deliver as written *may* be referred to some exemption printed on back of message, to which no reference was made in the answer, nor attention of sender called to it when filed, especially where the exemption relied on fixes an amount of damages.

7. NEGLIGENCE.—TELEGRAPH COMPANY cannot relieve itself from negligence by stipulation on back of message.

8. CHARGE.—Judge should not instruct jury upon an issue as to which there is no evidence.

9. NEW TRIAL properly refused, on grounds: First, there was no evidence to show that delay in delivery of message was the proximate cause of the injury; second, there was no evidence from which jury could infer wanton negligence or wilful misconduct; third, only one inference could be drawn from the evidence.

10. REHEARING refused.

*Divided Court.*

Before GAGE, J., Edgefield, October Term, 1905. Affirmed.

Action by J. B. Walker against Western Union Telegraph Co. From judgment for plaintiff, defendant appeals.

*Messrs. Geo. H. Fearons, Nelson & Nelson* and *Tompkins & Wells,* for appellant, cite: *Evidence should not be admitted on point reasonably not in contemplation of contracting parties:* 70 S. C., 10, 356; 60 S. C., 381; 61 S. C., 329; Joyce on Elec. L., sec. 823; 72 S. C., 295; 70 S. C., 423, 543; 71 S. C., 29. *Injury alleged was not the proximate cause of failure to deliver, as written:* 72 S. C., 120; 70 S. C., 418; 130 N. C., 447; 56 S. W., 568; 91 Tex., 206; 104 Tenn., 56; 88 Tex., 9; 7 Ind. App., 208; 30 S. W., 937; 47 S. W., 396. *No evidence of wantonness:* 64 S. C., 491; 66 S. C., 545; 72 S. C., 256; *Roberts* v. *Tel. Co.,* 74 S. C.; *Murray* v. *Tel. Co.,* 74 S. C.; 60 S. C., 71; 70 S. C., 42; 69 S. C., 500; 64 S. C., 9; 65 S. C., 444; 66 S. C., 452; 72 S. C., 256; 69 S. C., 453. *Breach of contract occurred at delivery of changed message in La.:* 70 S. C., 83; 71 S. C., 386; 72 S. C., 516; 57 S. C., 330; 1 Wall., 310; 66 S. C., 98; 70 S. C., 254; 154 U. S., 190; 146 U. S., 657; 194 U. S., 119; 73 S. C., 140; 22 Ency., 1378; 122 U. S., 347; 162 U. S., 650. *Telegraph company may adopt reasonable rules and regulations:* Joyce on Elec. L., secs. 705, 715, 717, 718, 680; 19 S. C., 71; 5 S. C., 358; 70. S. C., 83; 71 S. C., 303, 380, 506; 72 S. C., 516; 18 Fed. R., 717; 11 L. R. A., 102; 124 U. S., 444. *Court*

33—75

*should direct verdict where case depends solely on questions of law:* 13 S. C., 119, 378; 42 S. C., 30; 57 S. C., 293; 63 S. C., 380. *Laws of La. not being pleaded, the presumption was the common law prevailed there:* 65 S. C., 437; 70 S. C., 254, 418, 539; 65 S. C., 98, 570; 72 S. C., 116, 516; 66 S. C., 98; 73 S. C., 140; 1 Wall., 310; 174 U. S., 190; 146 U. S., 657; 194 U. S., 119. *Whether plaintiff could have reached Edgefield, is too uncertain:* 14 Ind. App. Ct., 341; 39 Kan., 586; 70 Tex., 243; 76 Tex., 253; 13 S. W., 386; Shear. & Red., sec. 739; Pollock on Torts, secs. 36 and 37; 8 Ency., 694. *As to apprehensions of plaintiff and discretion in granting new trials:* 69 S. C., 535; 41 S. E., 881; 11 S. E., 1044; 37 S. E., 479; 12 S. W., 534; 30 S. W., 1107.

*Messrs. J. Wm. Thurmond, N. G. Evans* and *S. G. McG. Simkins,* contra, cite: *Evidence objected to was responsive to allegations:* 70 S. C., 8; 72 S. C., 442; 60 S. C., 202. *No exception lies to admission of evidence without objection:* 70 S. C., 377; 73 S. C., 102. *Statute includes damages for anxiety:* 69 S. C., 531. *Evidence showed wantonness:* 65 S. C., 444; 72 S. C., 350; 70 S. C., 419; 35 S. C., 484; 60 S. C., 74; 72 S. C., 442; 54 S. C., 498; 57 S. C., 253. *Our statute covers interstate messages:* 54 L. R. A., 161; 45 N. Y., 113; 56 L. R. A., 486; 34 L. R. A., 497; 129 U. S., 788; 73 S. C., 140; 37 S. C., 412; 43 L. R. A., 214; 39 Mo. App., 88; 112 Mo., 622; 39 S. C., 484; 27 Ency., 1042. *Contract to relieve from negligence is void:* 55 S. C., 152; 9 L. R. A., 744; 36 L. R. A., 711; 34 L. R. A., 497; 162 U. S., 1105; 25 Ency., 1 ed., 789; 34 S. C., 146, 519.

The opinion in this case was handed down on October 2, 1906, but remittitur stayed on petition for rehearing until

December 12, 1906. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. This action came on for trial at the October, 1905, Term of Court of Common Pleas for Edgefield County. The verdict was for the plaintiff for the sum of $950.

The complaint sets forth that the plaintiff and his family resided in the town of Edgefield, S. C., and had so resided about one year. During the last of April, 1905, he was temporarily absent in the city of New Orleans, when Mrs. J. B. Walker, his wife, telegraphed him as follows:

"Wire your address after to-day. Baby had convulsions this morning. Resting now."

To this telegram the following answer was sent and received:

"Mrs. J. B. Walker, Edgefield, S. C. Be here to-morrow and Monday. Wire again to-night child's condition. Will come if needed."

The following telegram was sent by N. G. Evans, Esq.:

"Edgefield, S. C., April 29th, 1905.

"J. B. Walker, New Orleans, La., St. Charles Hotel. Toots desperately ill; convulsions. Better come."

The following was delivered by the Western Union Telegraph Co.:

"Edgefield, S. C., April 29th, 1905.

"J. B. Walker, New Orleans, La., St. Charles Hotel. Ties displayed; all convulsions better now. N. G. Evans."

The word "Toots," as mentioned in said original telegram delivered by said N. G. Evans for transportation and delivery as aforesaid, was a nickname for J. B. Walker, Jr., the son of this plaintiff. The said J. B. Walker, Jr., being at the time desperately ill at the home of the plaintiff in Edgefield, S. C., of which fact the agent of the defendant was well apprised, being told by Mr. Evans that the child was unconscious. When the plaintiff received the aforesaid telegram as copied, he went at once to the agent of the defendant telegraph company and asked that the telegram

be repeated, as it was not intelligible as received. Thereupon an answer was received, claiming to be from Edgefield, that the first two words in the telegram were "Toots desperately"—no other change being made in the copy made by the agent in New Orleans—the dispatch reading, "Toots desperately; all convulsions better now."

The plaintiff alleges that he was lulled into security by the words "better now," and that if the dispatch as sent by N. G. Evans had retained the words "better come," he would have left the city of New Orleans at once, in the effort to reach the bedside of his dying child. He alleges that he could have left that night at 8.25 o'clock for Edgefield, S. C., and that he could have reached Edgefield during Sunday night, April 30th, in time to see the remains of his child, the child having died Sunday morning between 5 and 6 o'clock.

The complaint alleges that the plaintiff has suffered and still suffers great annoyance, anguish and stress of mind, and physical pain and injury, arising from being deprived of the privilege and consolation of seeing his said son in life and during his last illness, and of seeing his body as it lay in death at Edgefield, S. C., and of accompanying his remains to Beaufort, S. C., and of administering to his wants in his said last illness, and giving his sympathy and support to those dear to him and said child, and of receiving the sympathy of near relatives in such trying event, and of being at his home on so sad an occasion, and of being thought negligent of said child and its mother, and those near and dear to the plaintiff, by his and his said child's near and dear relatives on so sad an occasion; this plaintiff having been subjected to such great physical pain and injury, mental anguish and suffering as to cause him to lose much sleep, and has suffered and still suffers great physical pain, anguish and regret, all due to the wanton, wilful and reckless negligence of the defendant and its servants and agents, in failing to correctly transmit and deliver said original message as originally worded and delivered

for transmision. Wherefore, the plaintiff demanded judgment against the defendant for the sum of $1,995 and costs.

The answer, amongst other things, avers that defendant has not sufficient information to know that the plaintiff was a citizen and resided at Edgefield, S. C. It admitted the allegations in paragraph two of the complaint, that the defendant was and is a telegraph company, and was and is engaged as a common carrier and transmitter of telegraph messages for hire, being engaged as such in transmitting messages over its line of wire among other points, from the town of Edgefield, S. C., to the city of New Orleans, La., and that at the time alleged by the plaintiff the defendant had and has offices for transaction of its business and agents therein for that purpose. It also admits that the telegram signed by N. G. Evans was presented at the office of the defendant for transmission and delivery.

It denies the description of the telegram, etc., set forth in the pleadings and matters of that character, but it set forth that the damages and suffering by the plaintiff was due to his own negligence, for the reason that the telegram, as delivered to him in New Orleans, was obviously erroneous, and slight diligence on his part in requesting that such message be corrected, would have resulted in the error being promptly detected and the correct message obtained, thus relieving plaintiff of any of the alleged damages and suffering. That the plaintiff failed to exercise the diligence required of him by law to reduce the damages that he alleged he suffered by reason of the negligence of this defendant. If he had exercised such diligence, he would have suffered no damages or injury.

Both parties to this action introduced testimony. That of the plaintiff tending to show that the telegram of N. G. Evans to J. B. Walker was placed in the hands of defendant's agent after that sent by Mrs. Walker but before dinner-time, between 12 and 1 o'clock. The plaintiff did not attempt to explain when or where the alteration of his dispatch was made by the defendant and its agents or

servants. That he would have been able, in case he had
received the dispatch in its integrity, to reach Edgefield,
S. C., on Sunday night, April 30th, and it also tended to
show that the plaintiff made a demand to have telegram
repeated upon its discovery that the same was incompre-
hensible, and that when it was so repeated it was still mani-
fested thereby that the child was better, and also by the
use of his best endeavors on Sunday, April 30th, after he
got notice of his son's death, he was able to reach Beaufort
in time to attend the interment of his child on Monday.

On the other hand, the testimony of the defendant tended
to show that the dispatch left Edgefield, over the line of the
defendant, after 4 o'clock on Saturday, April 29th, and
reached New Orleans without delay. That in repeating
the message, the words "better now" still remained in the
copy furnished. Also tended to show that by the use of
means open for his acceptance, the plaintiff could not have
reached Edgefield in time to see the child in life or to have
received a sight of the remains of said child until during
Monday.

After a verdict for the plaintiff, defendant moved for a
new trial. This was refused by the Circuit Judge. The
defendant appealed from the judgment of the Circuit Court
on the following grounds:

Exceptions I., II. "Because his Honor erred in per-
mitting the witness, N. G. Evans, over objection of defend-
ant's counsel, to testify as follows: The Court: 'Ask him
how long the body was kept there. Mr. Simpkins:
How long was the body kept there? A. About some
thirty-odd hours.' The error being that the testimony was
incompetent and irrelevant and not in contemplation of the
parties at the time the contract was made out of which the
tort arose, and it could not be inferred from the wording
of the telegram that such a condition would arise.

"2. Because his Honor erred:

  "(a) In allowing the witness, N. G. Evans, over objec-
tion of defendant's counsel, to testify as follows: 'Q. Did

Mr. Walker have the privilege of attending the body as it was carried to Beaufort? Mr. Nelson: We object. The Court: Ask him if Mr. Walker went with the child's body. Mr. Simpkins: Q. Did Mr. Walker go with the child's body to Beaufort? A. No, sir.'

"(b) In allowing Mrs. Walker to testify, over the objection of defendant's counsel: 'Q. On Monday morning, what did you do? A. We went to Beaufort and took the— Mr. Nelson: We object. It is not relevant and not in the contemplation of the parties. Mr. Simpkins: Q. What time did Mr. Walker get there * * * A. In the morning some time, we had the burial at 12 o'clock, and he got there a few minutes before, as the carriages were at the door, did not have but a few minutes at the house.'

"(c) In allowing the witness, Mrs. Charles Griffin, to testify, over the objection of defendant's counsel: 'Q. Did Mr. Walker accompany you at all? A. No, he did not.'

"(d) In allowing the plaintiff to testify, over the objection of defendant's counsel: 'Q. What time did you get to Beaufort? A. Between half-past 11 and 12 o'clock.'

"The error in allowing each of said witnesses to so testify being that the same was irrelevant and was not in contemplation of the parties at the time the telegram was sent, and was not an element of damage contemplated by the statute, the same being remote and speculative, and not the proximate result of any act of defendant."

We will now pass upon the points raised here suggesting that the Court erred, first, in allowing certain testimony, which was objected to by defendant, to be received, notwithstanding such objection; second, because of the overruling of the several motions for nonsuit; third, because of the Judge's refusal to direct a verdict in favor of the defendant; fourth, as to the Judge's errors in his charge to the jury.

(a) When Mr. Evans, a witness for the plaintiff, was on the stand, it seems that he was asked how long the remains of the child were kept in Edgefield, and he replied

to this question—that from its death on Sunday to its removal to Beaufort on Monday, it remained in Edgefield. It is true, that the margin allowed by law in giving and receiving testimony is based upon the position that anything not connected with the tort sued for should not be allowed in testimony, but it seems to us that the dispatch sent by Mr. Evans to the plaintiff wherein he used the words "better come," with the worde "desperately ill," with the fact that the defendant was notified on Saturday morning that the child was dangerously ill and would likely die, would apprise the defendant that the death of the child and the presence of the father were in contemplation of both sides of this controversy, and such being the case, questions relating to the death of the child and the delay of the father in reaching its bedside, could be said to be in the minds of both parties, and, therefore, this testimony is competent.

(b) The same remark may be made as to the competency of the testimony of Mr. Evans, when he stated that the plaintiff did not have the privilege of accompanying the remains of his child to Beaufort. If anything, it was helpful to defendant's case, but it seems to us that all of it was competent.

(c) The objection to Mrs. Walker's testimony in regard to taking the remains to Beaufort was of no serious moment, because she did not answer the question after objection had been interposed, that Mr. Walker joined the funeral cortege on its way to the grave, did not amount to anything.

(d) So it is of no moment that Mr. Walker testified that he reached Beaufort between 11.30 and 12 o'clock. These exceptions are overruled.

"III. Because his Honor erred in allowing the plaintiff, over objection of defendant's counsel, to testify that he 'went to the telephone office and tried to telephone Edgefield. (Argued.) Mr. Simpkins: You tried to telephone? A. Yes, sir, but the wires were

down.' The error being that it was not responsive to any allegations of the complaint."

As to this exception alleging error in the plaintiff's being allowed to testify that he went to the telephone office and tried to telephone to Edgefield on Saturday evening while in New Orleans—we think this is responsive, because the defendant charged that the plaintiff did not use all the means in his power to reduce the damages that he alleged that he suffered by reason of the negligence of the defendant. It was perfectly competent for the plaintiff to show that he not only had the dispatch repeated, but that he endeavored to telephone to his wife and friend at Edgefield, and this means of receiving information was denied him because the telephone wires were down. The defendant's answer has made this competent. This exception is overruled.

"IV. Because his Honor erred in allowing the witness, N. G. Evans, over objection of defendant's counsel, to testify: 'Q. If the telegram in evidence that Mrs. Walker sent, if it was sent before your message was sent, it must necessarily have been delivered before 1.15 P. M.? Mr. Nelson: We object; it is his conclusion. A. If you will look at the agreement you will see that Mr. Harrett himself agreed upon the time the message was delivered in New Orleans according to the slip in Augusta, the agent's delivery slip shown me; you will see that it was absolutely impossible for the telegram to have such a date and delivered in New Orleans at the time shown you.' The error being that it was the conclusion of the witness, and the mark on the said telegram spoke for itself. The telegram from the witness to Walker, being marked as filed at 4.55 P. M. in Edgefield, and the agreement referrel to by the witness stating it was delivered to plaintiff in New Orleans at 5.05 P. M. the same day. The witness losing sight of the difference of one hour between Eastern time at Edgefield and Central time at New Orleans, and that by

Eastern time the telegram was delivered in New Orleans at 6.05 P. M.

N. G. Evans, when questioned as to the time at which he delivered the telegram sent to Mr. Walker on the 29th of April, 1905, was asked if it was sent before or after that of Mrs. Walker. This was objected to by the defendant. The attorney's attention was called to the written agreement of the plaintiff and defendant's attorneys as to the time when the message was delivered in New Orleans. While this was irregular, yet no objection was taken to the colloquy between the attorneys, and, therefore, this is overruled.

"V. Because his Honor erred in not granting the motion for a nonsuit upon the first ground, to wit: 'Because the testimony establishes the fact that even if defendant was negligent in not transmitting the message properly, the evidence fails to show that the mental anguish from the cause alleged was the direct, natural and approximate result of the defendant's negligence, because from the uncontradicted testimony, only one inference can be drawn as a matter of law, to wit: that the improper transmission of the message did not deprive the plaintiff of the right of seeing his child while alive, or after it was put in the coffin at Edgefield, and it did not prevent him from accompanying the remains from Edgefield, S. C., to Beaufort, S. C.' The error being that the uncontradicted testimony established the fact that the plaintiff could not have reached Edgefield, S. C., from New Orleans, La., before the death of the child, or before the body was taken to Beaufort, if he had left New Orleans immediately upon receipt of the telegram, as the plaintiff himself testified he could not have arrived there by railroad on account of the schedules between Augusta and Edgefield, and because of the absence of proof that the error in the transmission of the telegram was the proximate cause of the injury plaintiff is alleged to have sustained, and because there is an entire

absence of proof of any anguish suffered by the plaintiff on account of the alleged default of the defendant."

It is alleged that the Judge committed an error by not granting the motion for a nonsuit upon the first ground. It is a pure question of fact. There was testimony on both sides of this issue, and there being such testimony, the Judge viewed his duty in the correct light. This exception is overruled.

"VI. Because his Honor erred in not granting a nonsuit on the second ground, to wit: 'Because the evidence does not show, nor does it tend to show, any wilfulness, wantonness or recklessness on the part of the defendant as to a cause based upon a wilful tort.' The error being that the evidence failed to show any wilfulness or wantonness on the part of the defendant, but on the contrary established that the message was transmitted and delivered promptly, and that the defendant had same repeated when so requested, and there was no evidence whatever of such a character as to warrant such damages."

How far the jury were influenced to find the defendant guilty of wanton or wilful negligence by its conduct, it is difficult for us to comprehend. It may be that the uncertainty in determining exactly when, where and how changes in the telegram were made, and by whom the same were made, were significant circumstances. When an opportunity was afforded the defendant to correct the wrong done the plaintiff, it was not done. Whether its failure was wilful or wanton, were questions of fact for the jury to decide; therefore, it was not error in the Circuit Judge to refuse to hold that the motion for a nonsuit should be granted. This exception is overruled.

"VII. Because his Honor erred in not granting a nonsuit as to the whole case, because there was no evidence either of negligence proximately causing damage, or of wilful tort."

This presents questions of fact, and there is no reason suggested why the Circuit Judge erred in refusing to grant

the nonsuit on the grounds asked for. This exception is
overruled.

"VIII. Because his Honor erred in not granting the non-
suit on the third ground, to wit: 'Because the cause of action
did not arise in this State, and in the absence of proof, it
will be presumed that the common law prevails,
which does not permit a recovery for mental anguish
disconnected with or in the absence of any bodily
injury in a foreign State where the cause of action arose.'
The error being that the uncontradicted testimony estab-
lished the fact that the message was correctly transmitted
from Edgefield, S. C., to Augusta, Ga., and from Augusta
to Atlanta, Ga., and the alleged breach of contract, out
of which this cause of action arose, occurred in New
Orleans, La., when the message was delivered to plaintiff,
and the laws of the latter State in reference to a recovery
for mental anguish, in the absence of actual damages, was
not pleaded."

This ground of appeal presents a serious question.
There is no doubt but that the place of delivery under con-
tract refers to the point of consummation; but in the case
at bar, while the delivery to J. B. Walker was to be in New
Orleans, yet it was not so delivered. The office at Edgefield,
called upon to deliver the same according to the testimony,
made the mistake in repeating the message; besides, the
exact point in the line of wire where the mistake occurred
has not been determined. It is true, Augusta and Atlanta
seek to wash their hands of any responsibility for the wrong
done the plaintiff, but it is for the jury to say whether it
has been done sucessfully. We are, therefore, of the opin-
ion that there was no error of the Circuit Judge, as here
complained of. This exception is overruled.

"IX. Because his Honor erred in not granting the non-
suit on the fourth and fifth grounds, to wit: '(4) Because
the testimony establishes the fact that the message was writ-
ten upon one of the blank forms used by the defendant com-

pany, which contains a stipulation that the defendant will not be liable in damages for the mistakes in the transmission of any repeated message beyond fifty times the sum received for sending same, unless specially insured.' And this is the contract between the parties.' '(5) Because the testimony only showed the existence of errors in the message as delivered, and this is not sufficient proof of negligence, as it may reasonably be referred to some cause within the terms of the exemption contained in the contract.'

"The error being in that there was no testimony showing negligence in failing to provide proper instruments or to employ skillful operators, the plaintiff is bound by the terms of the contract under which the message was transmitted, and for the alleged breach of which this action is brought, and is limited in his recovery to the sum agreed upon in said contract for unavoidable accidents or mistakes in the transmission of the message in question."

It seems that the message of Mr. Evans was transferred by him to a blank telegraph form. No attention was called to any fine print or stipulation printed in fine type on the back of said message when delivered to Mr. Evans nor was any reference to the same in the answer. We hold under those circumstances that the nonsuit should not have been granted on these grounds. At any rate, if such stipulation on the back of telegram could be held to operate to restrict a recovery for any damages, surely in nonsuit it could not be insisted upon where a recovery in some amount is admitted to be proper. This exception is overruled.

"X. Because his Honor refused to direct a verdict on the ground that the testimony showed that the cause of action did not arise in the State of South Carolina, and in holding: 'I shall leave it to the jury to say what point along the route, if any, it was changed and the words entered here into the words in which it was delivered yonder.' Whereas, his Honor should have held as a matter of law, that the cause of action did not arise in South Carolina, because the uncontradicted testimony

showed that the message was transmitted correctly from Edgefield to the relay office in Augusta, Ga., and from Augusta to Atlanta, Ga. This fact being uncontradicted, it was error to submit the question to the jury."

This question is a serious one. To answer this tort of the defendant is to be so construed as to locate the duty of delivery to take place alone at New Orleans, La., would necessarily destroy plaintiff's right of action. It would virtually hold that it was the plaintiff's duty to be able to locate the spot at which the disaster to the telegram occurred. Such cannot be the law. The defendant relies upon the case of *W. U. Tel. Co.* v. *James,* 162 U. S., 650, and *W. U. Tel. Co.* v. *Pendleton,* 122 U. S., 347, to support the doctrine that the South Carolina statute cannot be made effectual beyond the limits of this State in regard to transmission and delivery of telegrams sent from this State to be delivered in Louisiana; but as has been held, a contract made in Iowa for transmission of a telegram from a place in that State to a place in Missouri, is governed by the law of Iowa, making the proprietor of the telegraph company liable for all mistakes in transmission, *Reed* v. *W. U. Tel. Co.,* 34 L. R. A., 492, 497, the Court saying: "The contract was made in Iowa, and according to its terms it was to be partially performed in that State." Does the circumstance that it was to be performed partly in Missouri exempt it from the laws of Iowa? We think most clearly not. The statute in no sense attempts to regulate interstate communication by telegraph.

It has also been held thus in the case of the *Liverpool Steam Co.* v. *Phoenix Co.,* 129 U. S., 397, 453, that the nature, the obligation and interpretation of a contract are to be governed by the law of the place where it is made, unless the parties, at the time of making it, had some other law in view. Our own State has also held in *Fraser* v. *R. R. Co.,* 73 S. C., 140: "That the law of a State where a contract is made and is to be performed either in whole or in part, governs as to its nature, validity and interpretation." But

as we have previously held, this telegram was repeated from the State of South Carolina, which reinforces the views we have just expressed. We hold, therefore, that the tort of the defendant was committed within this State. This exception is overruled.

"XI. Because his Honor erred in charging plaintiff's third and fourth requests, without adding to such requests that the improper transmission of the telegram in question was the direct and proximate cause of the mental anguish, if any, suffered by the plaintiff. The error being that his Honor should in each of said requests have charged the jury that the defendant could not be held liable for the mental anguish suffered by the plaintiff unless the mental anguish was caused proximately and directly by the negligence of the defendant in failing to transmit the message correctly."

The defendant here seeks to charge the Judge with error in charging the third and fourth requests of plaintiff without adding to such requests that the improper transmission of the telegram in question was the direct and proximate cause of the mental anguish, if any, suffered by the plaintiff. We think that the Judge, in his general charge, has sufficiently protected the deefndant herein. Of course, the recovery by the plaintiff could only be had where the negligence of the defendant was the proximate and direct cause of anguish of the plaintiff. This exception is overruled.

"XII. Because his Honor erred in refusing to charge the fourth request of the defendant, to wit: '4. Like other corporations or individuals engaged in a public business, a telegraph company has the right to provide rules and regulations, with which all persons desiring to engage its services must comply, subject to the limitation that the rules must be reasonable. If you find that the message in question was written upon one of the forms regularly used by the defendant company, wherein it was stipulated between the parties by reason of the printed regulations indorsed on the sending blank in use by the defendant, that the defendant would not be liable in damages for mistakes. in the transmission of

any repeated message, beyond fifty times the amount received for sending same, and that the message was a repeated one, I charge you that the plaintiff is bound by the stipulation, which is the contract between the parties, and by which the sender and sendee are bound, and your verdict must be for the defendant, unless the plaintiff shows that the defendant did not exercise due care, but was negligent in failing to provide proper instruments or employing skillful operators. The mere fact of the existence of an error in the message as delivered is not sufficient proof of negligence, as it may be reasonably referred to some atmospheric or other cause beyond the control of human agency.'

"The error being: (a) That the request correctly stated the law in reference to defendant having a right to provide reasonable rules and regulations for the conduct of its business, and in the general charge no reference is made by his Honor thereto.

"(b) That the jury was precluded from considering whether the correct transmission or the bulling of the message was one of those accidents over which the defendant had no control, and if it was such an accident and not due to any negligence on the part of the defendant in failing to provide proper instruments or to employ skillful operators, then the plaintiff could not only recover the amount agreed upon in the contract, which did not exempt the defendant from liability for negligence, but only from liability from accidents or other causes beyond its control."

We hold that the Circuit Judge in his general charge did cover this matter, for he said: "I charge you this as I conceive the law; that is, a plain telegraph, its words speak for themselves, and no matter what the contract on the back of the blank is, it would not relieve the telegraph company from any act of negligence on its part. Those who serve the public cannot relieve themselves by any contract on the back of the paper by a release from negligence."

(b) Nor were the jury precluded from considering whether the incorrect transmission of the message was one of those accidents over which the defendant had no control. There was no proof offered on that subject and the charge of the Judge should not have included any reference thereto. This exception is overruled.

"XIII. Because his Honor erred in refusing to charge the tenth request of the defendant, to wit: '10. If the jury find that the contract out of which this cause of action arose, was not breached in the State, but in some other State, I charge you that, under the pleadings, your verdict must be for the defendant.' The error being that the uncontradicted testimony established the fact that the message was correctly transmitted from Edgefield, S. C., to Augusta, Ga., and from Augusta to Atlanta, Ga., and the alleged breach of contract, out of which the action arose, occurred in New Orleans, La., when the message was delivered to plaintiff, and the laws of the latter State in reference to recovery for mental anguish in the absence of actual damages was not pleaded."

We have already considered a similar exception and have overruled the same. We, therefore, overrule this exception.

"XIV. Because his Honor erred in charging the jury: 'If Mr. Evans, if Mr. Walker filed a telegram with the telegraph company, and the telegraph company undertook to carry that message over its line, whether it be in a different State off 100 or 1,000 miles, their duty was to carry it over every part of the line; and if it undertook to carry the message from start to finish and failed to do it, then it is liable under the law of the State where it undertook to do the service. Now, what is charged here in the complaint? The charge in the complaint is that somewhere, at some time, and in some way, the message which was delivered to the telegraph company at Edgefield was distorted and changed, etc.'

"The error being: (a) That the cause of action only arose where the contract was breached, to wit: In New Orleans;

34—75

and in virtually charging the jury that when the defendant undertook to transmit the message from Edgefield, S. C., to New Orleans, La., it was liable for any failure on its part to do so, irrespective of any conditions which might arise.

"(b) That the jury was misled and confused, in that his Honor first stated that he would leave it to the jury to say at what point along the route the change in the telegram was made, and in afterwards stating that the defendant was liable under the law of the State where it first undertook to do service.

"(c) That the complaint alleged definitely in the fourth paragraph thereof that the message was accepted and received in Edgefield for transmission, and that the defendant at Edgefield, in conformity with its promise and agreement, did transmit a message, which was not the one delivered to it for transmission; whereas, the uncontradicted testimony established the fact that the message filed was transmitted correctly from Edgefield, and the errors occurred beyond the limits of the State of South Carolina."

We do not think that the Circuit Judge made any error as here complained of. It was left to the jury to say, under the testimony offered, at what point on its line of wire the defendant committed its error by changing the original message. We do not think the jury was misled and confused by what his Honor did state. The jury must say whether the message which was accepted and received by the defendant at Edgefield, S. C., was distorted and was not the same message received for delivery. The defendant forgets that by the testimony the defendant sought at a request of the plaintiff to have the Edgefield office correctly transmit the message, and failed completely to do so. This exception is overruled.

"XV. Because his Honor erred in refusing defendant's motion for a new trial on the minutes for the following reasons:

"(1) Because there is no testimony tending to establish or sustain the verdict of the jury.

"(2) That there is an entire absence of proof that the delay in the delivery of the telegram was the proximate cause of the injury plaintiff is alleged to have sustained.

"(3) Because there is an entire absence of proof of any actual damages suffered by the plaintiff on account of the alleged default of the defendant.

"(4) Because there is an entire absence of testimony tending to establish wanton negligence, wilful misconduct, or such a state and frame of mind on the part of the defendant as will permit a recovery for exemplary damages.

"(5) Because, from the uncontradicted and undisputed testimony, only one inference can be drawn as a matter of law, to wit: That the delay in the delivery of the telegram did not deprive the plaintiff of the right of seeing his child while alive, and did not prevent him from seeing the body in death."

We do not think that the Judge committed any error in leaving it to the jury to weigh the testimony offered in the whole case to determine whether the verdict of the jury was sustained. It is the duty of the jury to determine those matters, and there was certainly some testimony offered to govern them. The Judge was satisfied with the conclusion of the jury thereon. There was not entire absence of proof that the delay in the delivery of the telegram was the proximate cause of the injury plaintiff sustained. Whether actual damages were included in the verdict of the jury we do not know, as no request was made by the defendant for the separation of the items of the recovery. Nor do we hold that the Judge was in error in holding that there was an entire absence of testimony tending to establish wanton negligence, wilful misconduct, or such a state and frame of mind of the defendant as would permit a recovery for exemplary damages. The testimony satisfied the Judge on this point; and lastly, under this ground, we cannot hold that the Circuit Judge was in error in declining that only one inference could be drawn as a matter of law.

It is certain that the plaintiff was prevented from seeing his son in death, and that if the telegram had been shown to him as it was written by Mr. Evans, he could have left New Orleans Saturday evening at 8.15 o'clock and reached Edgefield in time to see his child on Sunday night. And his Honor did not err in refusing defendant's motion for a new trial on the allegations of the defendant that if the plaintiff had received the true message, he could not have reached Edgefield before his dead child was carried from that place to Beaufort for burial. It was manifest from the language of the telegram that the plaintiff desired to reach Edgefield with all speed.

It is not necessary, so far as defendant was concerned, that the plaintiff should travel by railroad to reach Edgefield, it was only necessary that he could reach Edgefield by travel on the railroad or on the public highway. This exception is overruled.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES JONES AND WOODS *dissent.*

DECEMBER 12, 1906. PER CURIAM. After careful consideration of the petition herein, and as it was not made to appear to the satisfaction of the Court that any material question either of law or fact was disregarded or overlooked, it is ordered, that the petition be dismissed and that the order heretofore granted staying the remittur be revoked.