7682

N. H. BLITCH CO. v. ATLANTIC COAST LINE R. R. CO.

SAME v. SAME.

BLITCH v. SAME.

COMMINS v. SAME.

JURISDICTION—CARRIER—FREIGHT—ICING—INTERSTATE SHIPMENT.— The State Court has jurisdiction of an action to recover an overcharge of a carrier for icing cars in an interstate shipment in the absence of allegations of an unreasonable and unjust exaction for services in transportation based upon an established interstate rate, there being no presumption that the carrier has filed with the interstate commission a schedule of rates including icing.

*Texas & Pacific* v. *Abilene Cotton Oil Co.,* 204 U. S., 426, *distinguished from this.*

Before PRINCE, J., Charleston, Fall term, 1908. Affirmed.

Four cases: 1. N. H. Blitch Co. against Atlantic Coast Line R. R. Co.: both as a foreign and domestic corporation

and Armour Car Lines; 2. Same against Same; 3. N. H. Blitch against Same; 4. E. L. Commins against Same.

The Circuit decree overruling defendants' demurrer is:

"This case came before me at the fall term (1908) of the Court of Common Pleas for Charleston county on the demurrer of the defendant, Armour Car Lines, to the jurisdiction of this Court to entertain any of the plaintiff's several causes of action. The special grounds of demurrer may be found in the record, and it will be here sufficient to say that this defendant insists that, as each of the plaintiff's causes of action is for an overcharge for icing a car used in an interstate shipment, such action cannot be entertained by a State Court. That since the adoption by Congress of the Interstate Commerce Act the Federal Courts have exclusive jurisdiction of such actions.

"Counsel for defendant, in argument, first contend that in the United States there is no National or Federal Common Law, and in support of this contention they cite the case of *Gatton* v. *Chicago R.,* 63 N. W. Rept., 589, 28 L. R. A., 556, and concluded that prior to the adoption of the Interstate Commerce Act there was no law by which interstate commerce could be regulated or controlled.

"It is true that we have no national or federal common law, strictly speaking, that is to say, we have no such body of law different from the common law of England as adopted, recognized, applied and enforced in the several States of the Union. But it is also true that our Courts both State and Federal, have from the beginning enforced against common carriers engaged in both interstate and foreign commerce the rules and regulations of the common law of England as adopted or recognized by the several States. And it is true that the Federal Courts often in construing the common law of a State gave it an interpretation different from that given and recognized by the Courts of

such State. This is well illustrated by the case of *New York C. R. Co.* v. *Lockwood,* 17 Wall., 357, 21 L. Ed., 627.

"In *Interstate Commerce Commission* v. *Baltimore & O. R. Co.*, 145 U. S., 263, 36 L. Ed., 699, a case involving interstate commerce, it was held: 'Prior to the enactment of the Act of February 4, 1887, to regulate commerce, commonly known as the Interstate Commerce Act (24 Stat., at 1379, Chap. 104), railway traffic in this country was regulated by the principles of the common law applicable to common carriers.'

"So, too, in *Bank of Kentucky* v. *Adams Express Co.,* and *Planters' National Bank* v. *Adams' Express Co.*, 93 U. S., 174, 23 L. Ed., 872, a case of interstate commerce, defendant was held liable and the whole argument of the opinion proceeds upon the assumption that the common law rule in respect to common carriers controlled. In *Western Union Tel. Co.* v. *Call Pub. Co.*, 181 U. S., 103, 45 Law Ed., 771, Mr. Justice Brewer, after citing the foregoing authorities, says: 'Reference may also be made to the elaborate opinion of District Judge Shiras, holding the Circuit Court of the Northern District of Iowa, in *Murray* v. *Chicago & N. W. R. Co.*, 62 Fed. Rep., 24, in which is collated a number of extracts from opinions of this Court, all tending to show the recognition of a general common law existing throughout the United States; not, it is true, as a body of law distinct from the common law enforced in the State, but as containing the general rules and principles by which all transactions are controlled, except so far as those rules and principles are set aside by express statute. It would serve no good purpose to here repeat those questions; it is enough to refer to the opinion in which they are collated.'

"I think it clear, therefore, that prior to the adoption of the Interstate Commerce Act a case such as the one at bar could be entertained by the Court of Common Pleas (a Court of general jurisdiction) of this State whenever said Court could acquire jurisdiction of the person of the parties

to the suit, and that such Court was entirely competent to enforce against a common carrier of interstate freights such reasonable rules and regulations as the common law provides.

"But, says the defendant, through its counsel, grant this to have been true before the Interstate Commerce Act was passed by Congress, it can no longer be true for these reasons :

1. "By the Federal Constitution Congress is given exclusive control over interstate commerce.

2. "By the Interstate Commerce Act the shipper aggrieved by a breach of duty by a common carrier of goods in an interstate shipment has the option of two remedies—he may apply to the Interstate Commerce Commission for redress or he may bring suit in the Circuit or District Court of the United States having jurisdiction, but he cannot have both remedies.

3. "That the jurisdiction of the Federal Court in such case is exclusive.

"Counsel cite in support of this contention for exclusive jurisdiction of the Federal Courts in such cases, the case of *Van Patton* v. *Chicago M. & St. P. R. Co.*, 74 Fed. Rep., 891, and he might have cited the higher authority of *Sheldon* v. *Wabash R. Co.*, 105 Fed. Rep., 785, and *Northern Pac. R. Co.* v. *Pac. Coast Lumber Mgrs. Assn.*, 165 Fed. Rep., 9. But despite such reputable authority I can not agree that Congress, by the act known as the Interstate Commerce Act, intended to exclude the State Court from exercising jurisdiction in such cases. It is to be noted that the act does not expressly exclude State Courts. Neither does it prohibit the State Courts from exercising jurisdiction. Besides, by Section 22 of said act, it is expressly stated that the remedies therein provided are in addition to those already existing at common law or by statute, I venture to think that the fact that, by the terms of the interstate commerce law, a right of action is given in the Federal

Court does not raise the presumption that the jurisdiction of the State Courts over the subjects herein referred to is excluded. *Plaquemine Tropical Fruit Co.* v. *Henderson,* 170 U. S., 513, 42 L. Ed., 1127.

"While it is true that under the Federal Constitution legislative control of commerce between the States is vested in Congress, it does not thereby follow that State Courts may not hear and determine controversies between their citizens, and between their citizens and citizens of other States, growing out of such business and involving Federal laws enacted in pursuance of the Constitution, unless it clearly appears on the face of such laws that it was the purpose of Congress to exclude the State Courts from jurisdiction of such controversies. *Id.* See also *W. U. Tel. Co.* v. *Call Pub. Co., supra.* That this was the view taken of this question by Chancellor Kent in his Commentaries is evident from the following: 'The conclusion, then, is that in judicial matters the concurrent jurisdiction of the State tribunals depends altogether upon the pleasure of Congress, and may be revoked or extinguished whenever it thinks proper in every case in which the subject matter can constitutionally be made cognizable in the Federal Courts; and that, without an express provision to the contrary, the State Courts will retain a concurrent jurisdiction in all cases where they had jurisdiction originally over the subject matter.' 1 Ken. Com., 400. As persuasive authorities reference may be had to the following cases, to wit: *Texas & Pac. R. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S., 426, 51 L. Ed., 553, and *Texas & Pac. R. Co.* v. *Cisco Oil Co.,* 204 U. S., 450, 51 L. Ed., 563. I suggest that said cases are of persuasive authority for the reason that in both cases the controversy involved interstate commerce, and the actions were entertained by the State Court of Texas; and although the question of jurisdiction of the State Court under the Interstate Commerce Act was challenged, it was not decided by the Supreme Court of the United States. In each case the Court held that the State

Court had not properly construed the Interstate Commerce Act, and the case was remanded to the State Court for trial in conformity with the views expressed by U. S. Supreme Court. Had the Court thought that there was anything in the contention that the State Court was without jurisdiction, it seems to me the Court would not have sent cases back to the State Court, but would have decided the State Court without jurisdiction, and thus ended the causes.

"It should be noted that the case at bar is not brought to recover for excessive or unreasonable charge for transportation of an interstate shipment of goods, but for an excessive and unreasonable charge for icing a refrigerator car used in an interstate shipment of perishable goods. I have no doubt that such action could be maintained at common law, but I do have some doubt as to whether or not such wrong is covered by the Interstate Commerce Act. Even if it is covered, I hold that the State Courts have concurrent jurisdiction with the Federal Courts, and are not without jurisdiction to hear and determine it.

"I conclude, for the reasons herein given, that the demurrer of the defendant, Armour Car Lines, should be overruled.

"I have not the written demurrer at this time before me, and I forget whether or not the defendant, Atlantic Coast Line R. Co., joined in this demurrer, but whether it did so or not, the demurrer should be overruled.

"It is, therefore, ordered and adjudged that the demurrer interposed herein, challenging the jurisdiction of the Court to hear and determine this case, be and the same is overruled."

From this decree, defendants appeal.

*Messrs. T. Moultrie Mordecai* and *Mitchell & Smith,* for appellants. *Messrs. H. A. M. Smith* and *T. M. Mordecai* cite: *What is interstate commerce?* 63 S. C. 251; 81 S. C. 173; 4 McC. 507; 5 Pet. 56; 32 S. W. R. 890. *Carrier*

*must carry at reasonable charge:* 29 S. C. 265; 2 Hut. on Car. 648.   *Effect of federal commerce clause:* 154 U. S. 209; 56 S. C. 150.   *Federal jurisdiction exclusive over interstate commerce:* 120 U. S. 492; 156 U. S. 587; 122 U. S. 336; 95 U. S. 487; 135 U. S. 109; 184 U. S. 41; 196 U. S. 206; 191 U. S. 491; *and over interstate commerce act:* Suth. on stat. con. sec. 399; 73 Ala. 390; 13 Barb. 209; 58 Fed. 861; 74 Fed. 981; 80 Fed. 78; 12 L. R. A. 725; 22 Wall. 98; 63 N. W. 589.   *Interstate Commerce Commission must be first applied to:* 204 U. S., 426; 206 U. S., 464.

*Messrs. Legare, Holman & Baker,* contra.   *Mr. Holman* cites: *A right given by a federal statute not providing a remedy may be enforced in the State Court:* 204 U. S., 427, 449.   *Citizen may sue a foreign corporation upon any cause of action:* 32 S. C. 319.

October 11, 1910.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES.   These four cases, involving the same question, were tried together by consent.   The suits were brought to recover for alleged overcharges for icing the refrigerator cars in which plaintiffs during April, May, and June 1910 made numerous shipments of vegetables over defendant's lines, from Meggetts, S. C. to various markets in other States.   The complaint set out in the record is very long and contains a statement with reference to each shipment, but it will be sufficient to state the first mentioned as typical of the others.   After alleging that the Atlantic Coast Line Railroad Company is a corporation both under the laws of South Carolina and Virginia, and that Armour Car Lines is a corporation under the laws of New Jersey and that plaintiff, N. K. Blitch Co. is a domestic corporation, the complaint states:

5. "That heretofore, on the 26th day of April, A. D., 1906, the plaintiff above named delivered to the defendants

8—87

200 crates of cabbage at Meggetts, S. C., which was received by the defendants for transportation to Boston, Mass., there to be delivered to A. F. Young & Co. for sale for the account of the plaintiff.

6. "That the said cabbage were received by the defendants from the plaintiffs, and placed in what is known as a refrigerator car, furnished by the Armour Car Lines, and was so carried to the place of destination. That the defendants, except the Armour Car Lines, received from the plaintiff the sum of one hundred and eighty dollars ($180) for freight for the carriage of said cabbage; and that defendants charged and received from the plaintiff fifty-nine dollars ($59) for icing said car; that the actual cost of icing said car · was twenty-six 25-100 dollars ($26.25), and that defendants charged and received from the plaintiff the sum of thirty-two 75-100 ($32.75) in excess of the actual cost of such icing.

7. "That the defendants are now justly due and owing the plaintiff the sum of thirty-two 75-100 dollars ($32.75), the same being amount received from the plaintiff by the defendants in excess of the actual cost of icing said car."

The complaint further alleged—

170. "That the icing charges on all of the cars above mentioned were paid at the place of destination; that the same had to be paid before the defendants would deliver the said vegetables, and was not paid voluntarily and with full knowledge of the facts. . That the plaintiff alleges it was not aware, at the time it paid said icing charges, of the costs incurred in connection therewith; that the plaintiff was in no position to decline to pay the charges so demanded by the defendants. That plaintiff further alleges that the icing charges were unreasonable and unjust.

171. "That the charges paid for freight on all of the cars above mentioned included the charge for the use of the refrigerator cars, and that the icing of said cars was necessary for the protection of the vegetables in the course of

transportation, and the plaintiff alleges that it was under no obligation to pay more for the icing of the cars than the actual cost of same; that the defendants had no right to make any profit on the ice which was used by them for the preservation of the plaintiff's property, and that they had no right to charge more than the actual cost of such ice, for that, in furnishing the ice, they acted for and on behalf of the plaintiff, and had no right to make any profit thereon..

172. "That by reason of the overcharge in icing the said cars, as above set forth, the plaintiff has been damaged in the sum of nineteen hundred and seventy 19-100 dollars ($1,970.19)."

The defendant foreign corporation demurred on the ground that the Court had no jurisdiction of the subject of the action in that an action to recover for an unreasonable charge for icing for an interstate shipment was exclusively within the jurisdiction of the United States Courts.

The Circuit Court, in an opinion herewith reported, overruled the demurrer and from that order this appeal is taken.

. We approve the conclusion of the Circuit Court in overruling the demurrer.

It will be observed that the complaint does not allege an unreasonable and unjust exaction for services in transportation based upon a rate established for an interstate shipment by the Interstate Commerce Commission, and there is no presumption that the defendants had filed with the Commission a schedule of freight rates, including charges for icing, and that such rates were promulgated as required by the interstate commerce act. In this stage of the record, therefore, the case of *Texas and Pacific* v. *Abilene Cotton Oil Co.*, 27 Sup. Ct. Rep., 350, commented upon in *Southern Ry. Co.* v. *Tift,* 27 Sup. Ct. Rep. 709, is not authority for the contention of appellant, for in that case it appeared by the answer and evidence submitted that the rates were charged according to the schedule of rates filed under the interstate commerce act. In such circumstances it was held that the

State Court was without jurisdiction, and that a shipper seeking reparation predicated upon the unreasonableness of an established rate, must invoke redress as provided in section 9 of the interstate commerce act, by complaint primarily to the Commission or in certain cases by suit in any district or Circuit Court of the United States of competent jurisdiction. The Court declared that such must be the law, "because if the power existed in both Courts and the Commission to originally hear complaints on this subject there might be a divergence between the action of the Commission and the decision of a Court. In other words the established schedule might be found reasonable by the Commission in the first instance and unreasonable by the Court acting originally and thus a conflict would arise which would render the enforcement of the act impossible." To the same effect is *Baltimore & O. R. Co.* v. *U. S.* 30 Sup. Ct. Rep. 164, in which reference was made to the amendatory act of June 29, 1906.

The common law right of the shipper to recover of the carrier for unjust and unreasonable exactions for transportation is fully recognized in the Abilene case above cited when the assertion of such right may be made consistently with the due enforcement of the interstate commerce act. As we see no such inconsistency in the present state of the record we sustain the jurisdiction of the State Court.

The judgment of the Circuit Court is affirmed.