## 8482

### ELLIOTT v. ATLANTIC COAST LINE R. R. CO.

RAILROADS—INTERSTATE COMMERCE—CONFLICT OF LAWS—LIMITED LIA-
BILITY BILLS OF LADING.—In this case this Court held that a statute
of the State of Virginia construed by the Supreme Court of that
State, to declare invalid limitation of liability for negligence, applied
in an interstate shipment of horses from that State into this under
a limited valuation bill of lading for the reason that the acts of
Congress did not cover the subject and for the further reason that
the defendant has not shown by allegation and proof that he has
complied with the provisions of the Federal statutes, but while the
remittitur was held up on petition for rehearing, the United States
Supreme Court held in the cases of *Adams Express Co.* v. *Croninger,
Chicago etc. Ry. Co.* v. *Latta and Chicago etc. Ry. Co.* v. *Miller,* 226
U. S. 491, that the Federal acts applied in such cases, and this Court
being bound by the said decisions now reverses its former judgment,
and holds that in an interstate shipment, the consignee can only
recover for injury to horses by negligence, the amount stipulated in
such bill of lading as the value thereof.

Before PRINCE, J., Marion, Winter term, 1911.  Affirmed.

Action by E. T. Elliott against Atlantic Coast Line Rail-
road Company.    Plaintiff appeals.

*Mr. Jas. W. Johnson,* for appellant, cites: *The acts of
Congress are not applicable to the facts of this case:* 52 S.
E. 566; 204 U. S. 426; 158 U. S. 98; 68 C. C. A. 89; 169
U. S. 133; 191 U. S. 477; 169 U. S. 133; 184 Fed. 489.
*Enforcement of contracts in different forums:* 55 S. C. 120;
72 S. C. 405; 50 S. C. 303; 51 S. C. 33; 2 Hill's L. 601; 3
Strob. 412; 4 Rich. 219; 85 S. C. 26, 498; 73 S. C. 140; 91
U. S. 406; 75 S. C. 526, 464.

*Messrs. Henry E. Davis* and *Henry Buck,* contra, cite:
*One signing a contract is presumed to be aware of its con-
ditions, and when he accepts it is bound by it:* 26 S. C. 1;
62 S. C. 1; 65 S. C. 91; 83 S. C. 41; 112 U. S. 331.  *Has*

*Congress legislated on the subject?* 191 U. S. 477; 25 U. S. Stat. 855; 34 U. S. Statutes 586.

The opinion in this case was filed on October 2, 1912, but remittitur held up on petition for rehearing until

March 22, 1913. The opinion of the Court was delivered by

MR. JUSTICE WATTS. This was an action for damages by plaintiff against defendant. The complaint alleges that, on May 2, 1907, at Norfolk, Virginia, the plaintiff delivered and defendant received for shipment a carload of mules and horses in consideration of the usual freight charges paid thereon and the defendant agreed to safely carry and deliver same to plaintiff at Dillon, South Carolina. That the defendant did not fulfill and perform its agreement, but, on the contrary, carelessly and negligently acted and conducted itself in the business of common carrier; that one of the horses died and three others were injured and became diseased to such an extent that he was injured and damaged in the sum of $577.33, and he filed claim for that amount on July 10, 1907. Defendant denied the material allegations of the complaint, and, as a further defense, set up: "That in consideration of a reduced freight rate granted to plaintiff by this defendant at the time of the shipment alleged in the complaint, plaintiff agreed and contracted with the defendant, that should damages occur to any of the horses or mules contained in the shipment described in the complaint, for which this defendant might be liable, the value at shipping point on the day of shipment, should govern the settlement, in which the amount claimed for each horse or mule damaged should not exceed the sum of seventy-five dollars, and this defendant alleges that by reason of said contract, fairly entered into between plaintiff and defendant, for valuable consideration, the plaintiff is estopped from claiming a greater sum than seventy-five dollars for loss of, or damage

to, either or any of the horses or mules alleged in the complaint to have been damaged or to have died, and is estopped from setting up the value of any of the said horses or mules at point of destination."

Other defenses were set up, but not relied on at the hearing. The case was first tried before Judge Shipp, and a jury, and resulted in a verdict for the plaintiff for the full amount claimed. Upon motion of defendant, Judge Shipp granted a new trial, on the ground he had committed error in ruling out vol. 13, Interstate Commerce Reports, offered to be introduced in evidence by defendant's counsel. The case was then tried before Judge Prince, and a jury, in 1911, and a verdict rendered for the plaintiff for $275.88, which represented the value of the horses as limited in the bill of lading and damage to others and freight and expenses. At the trial, plaintiff offered to introduce in evidence vol. 13, Interstate Commerce Reports, which Judge Prince ruled out. After verdict, plaintiff appeals and alleges error on part of the presiding Judge in twelve exceptions. Exceptions 4, 5, 6, 7, 8, 9 and 10 question the correctness of his Honor's ruling in holding virtually that Congress has legislated upon this subject and the Virginia statute will not control. These exceptions are as follows:

Exception 4. "In holding 'That this contract being for an interstate shipment, is regulated by the interstate commerce law, and not by the laws of Virginia;' whereas, it is submitted, that Congress, not having legislated on the subject, the interstate commerce law did not apply, and the contract should have been construed according to the laws of the State of Virginia, where the contract was made.

Exception 5. "In not charging the jury that the contract for shipment of the horses in question having been made in the State of Virginia was to be construed according to the laws of Virginia, and under the statute law of Virginia, and the decisions of its Courts, a common carrier could not limit the common law liability for negligence, and, therefore, the

stipulation in the bill of lading in question undertaking to do so was null and void and the shipper was not bound thereby.

Exception 6. "In charging the jury: 'Now, it is competent for a common carrier to limit its common law liability to a certain extent,' in the face of the statute law of Virginia, and the decisions of the Virginia Courts construing it, which had been introduced in evidence, the contract in question having been entered in the State of Virginia.

Exception 7. "In charging the jury that the stipulation contained in the bill of lading limiting the amount to be recovered in case of loss for each horse to seventy-five dollars, if there was a reduction of the rate of freight caused by that limitation, was valid.

Exception 8. "In not charging the jury that the attempt of the defendant to limit its common law liability for negligence as shown by the bill of lading introduced in evidence, was null and void under the laws of the State of Virginia where the contract in question was entered into and that plaintiff was entitled to recover the full amount of the damages sustained not exceeding the amount claimed, provided he had sustained loss and damage through the negligence of defendant.

Exception 9. "In not charging the jury that they should disregard that part of the bill of lading which undertook to limit the defendant's liability, for damages caused by its negligence.

Exception 10. "In not charging the jury that even if the interstate commerce law was applicable that the stipulation in the bill of lading undertaking to limit the defendant's common law liability for damages caused by its negligence was void, for the reason that the amount fixed in the bill of lading does not purport to be an agreed valuation, but was fixed arbitrarily by the defendant without reference to the real value of the horses in question."

There is no question if Congress has legislated upon the question we are now considering, that the State statute of Virginia must give way and if the act in question of the Virginia legislature burdens interstate commerce that it must also give way, but if Congress has not legislated upon this precise question and the Virginia act does not burden interstate commerce, then this appeal must be determined by the Virginia statute. The Virginia statute is as follows: "Whenever any property is received by a common carrier to be transferred from one place to another, within or without this State, or when a railroad or other transportation company issues its receipt or bill of lading, in this State, the common carrier, railroad or transportation company issuing such bill of lading shall be liable for any loss or damage or injury to such property caused by its negligence or the negligence of any common carrier, railroad or transportation company operating within any territory or State of the United States to which such property may be delivered, or over whose lines such property may pass; and the fact of loss or damage in such case shall itself be *prima facie* evidence of negligence, and the common carrier, railroad or transportation company issuing any such receipt or bill of lading shall be entitled to recover in a proper action the amount of any loss, damage or injury it may be required to pay the owner of such property from the common carrier, railroad or transportation company aforesaid through whose negligence the loss, damage or injury may be sustained. No contract, receipt, rule, or regulation shall exempt any such common carrier, railroad or transportation company from the liability of a common carrier which would exist had no contract been made or entered into. The receipt of goods destined to a point beyond the line or route of the initial carrier or the acceptance of through freight on same, shall be deemed to be a contract for carriage to ultimate destination and delivery of such property at that point. And unless the common carrier, railroad or transportation

company first receiving such property shall, within a reasonable time after loss or damage thereto, pay to the consignor, his agent or assignee the amount or damage sustained thereby, then such consignor, his agent or assignee may by proper action recover of such common carrier, railroad or transportation company first receiving such property the amount of such loss or damage.

"No agreement made by a transportation company for exemption from liability for injury or loss occasioned by its own neglect or misconduct as a common carrier shall be valid."

Acts of Assembly of Virginia, extra session 1902-3-4, page 980, paragraphs 24 and 25.

The provision of the Virginia Code has been construed by the Court of Appeals of that State in the case of *Chesapeake and Ohio Railway Company* v. *Beasley,* page 566, 52 S. E. Reports, wherein this language is used: "The conclusion of the whole matter may, in our view, be summed up as follows: At common law, the carrier could not by contract limit or restrict his liability for injury or loss caused by negligence of himself or servants. The object of the legislature was to give to this recognized common law principle the force of a statute and it would, indeed, be a singular outcome of an effort on the part of the legislature to give an added sanction to the common law if by the ingenious construction the power to limit should be deduced from the prohibition to exempt."

That Court had the right to and did interpret the Code of Virginia. and unless the Congress of the United States has sought to prohibit a carrier engaged in interstate transportation from limiting, or has permitted a carrier to limit its liability to a stipulated valuation, or has legislated on the precise question at issue, the State of Virginia may require common carriers, although engaged in interstate commerce, to answer for the whole loss resulting from their negligence, whether there is a contract or not.

The sections of the act of Congress to regulate commerce, and the act known as the Elkins act, that can have any bearing in this case deals exclusively with the matter of rates and rebates, and what is known as the Carmack amendment to that act, sec. 20, deals with the right of a common carrier to relieve itself of liability for the acts of its connecting carriers who in effect are made its agents, instead of agents of the shipper.

The purpose of the interstate commerce act is stated in *Armour Packing Company* v. *United States*, 209 U. S.; *Texas and Pacific Railway Co.* v. *Abilene Cotton Oil Co.* 204 U. S. 426; *Louisville and Nashville Railroad Co.* v. *Mottley*, 219 U. S. 467, all of which cases point to the fact that Congress' great purpose was to prevent unjust and unreasonable rates, prevent favoritism, secure equality, require publication of rates and tariff, and to give all the same opportunity to know what the rates were and to have the equal benefit of them.

These cases point to the fact that the interstate commerce act deals primarily with rates and discriminations, and the right of a common carrier to limit its liability by special contract is not included either expressly or by implication.

In our opinion, the acts of Congress have not legislated or attempted to legislate upon the subject dealt with by the Virginia statute and the Virginia statute has been construed by the Virginia Court and should govern in this case.

This is not in conflict with the principle as laid down in the case of *Gulf, Colorado & Sante Fe Railway Company* v. *Hefley*, 158 U. S. 98, as there the State and Federal statutes operated upon the same subject matter, both dealing with rates and prescribing different rules, the Federal statute being within the competency of Congress to enact, the State statute had to give way.

The respondents rely upon the case of *Southern Railway Co.* v. *Reid*, decided, in January last, by Supreme Court of the United States. We do not think this case controls the

case at bar. A careful examination of the entire opinion will show that it was on the subject of rate·making and the regulation of interstate commerce. It holds that Congress had taken control of rate making and when the legislature of North Carolina undertook to penalize a carrier for not receiving freight intended for interstate shipment when no rate had been established it was invading the field already covered by an act of Congress and its action was void.

Each State may determine what powers may be possessed by corporations organized under its authority and what effect shall be attached to acts done by such corporations beyond their powers. That is a question of State policy, and, therefore, a matter of local and not general law. *Anglo-American Land Mortgage and Agency Company* v. *Lombard,* 132 F. 721, 68 C. C. A. 89. The Virginia statute does not attempt to undertake to deal with rates. It deals with contracts. It does not attempt to regulate interstate commerce, but prohibits, under the police powers of the State, the carrier from making a contract which it regards as contrary to public policy. It forbids a certain kind of contract and stops. This question has been settled in *Chicago, Milwaukee & St. Paul Railway Co.* v. *Salon,* 169 U. S. 133; *Pennsylvania R. R. Co.* v. *Hughes,* 191 U. S. 477, 24 Sup. Ct. 132, 48 L. Ed. 268.

The case· should have been determined by the law of Virginia, where the contract of shipment was made. *Frasier* v. *Railway Co.,* 73 S. C. 140, 52 S. E. 964; *Scudder* v. *Union Nat. Bank,* 91 U. S. 406, 412; *Walker* v. *Telegraph Co.,* 75 S. C. 526, 56 S. E. 38; *Gilliland & Gaffney* v. *Sou. Ry.,* 85 S. C. 30, 67 S. E. 20, 27 L. R. A. (N. S.) 1106.

Even if the act of Congress was intended to supersede all State legislation on the question under consideration in the case at bar, it would have no application for the reason that the defendant failed to allege or prove that it had complied with the requirements of the act of Congress. See *Blitch* v. *R. R.,* 87 S. C. 107, 69 S. E. 16; *Hardaway* v. *R. R.,* 90

S. C. 475. The case is, therefore, governed by the statute of Virginia and the construction of its State Courts.

His Honor was in error in holding that Congress had legislated upon the subject and that the Virginia statute did not control. The exceptions raising this question must be sustained. It is unnecessary to consider the other exceptions.

Judgment reversed and new trial granted.

MR. CHIEF JUSTICE GARY concurs for the reason stated in the opinion of Mr. Justice Watts, that even if the act of Congress was intended to supersede all State legislation on the question under consideration, it would have no application for the reason that the defendant failed to allege or prove that it had complied with the requirements of the act of Congress.

March 22, 1913. PER CURIAM. Heretofore, the judgment of this Court was rendered by Associate Justice Watts, as the organ of the Court, reversing the judgment of the Circuit Court and remanding the cause for a new trial. Within ten days ensuing, and before our judgment had been remitted to the Circuit Court, the respondent obtained an order for the stay of the remittitur until they could perfect their appeal to the Supreme Court of the United States or until their petition for a rehearing could be had. The appellant's counsel consented to a rehearing.

Since the judgment of our Court has been rendered, the Supreme Court of the United States by three cases, filed on January 6, 1913, in the cases of *Adams Express Co., Plaintiff in Error,* v. *E. H. Croninger; Chicago and St. Paul, Minneapolis and Omaha Railway Co., Petitioner,* v. *Bud R. Latta, and Chicago, Burlington and Quincy Railway Co., Plaintiff in Error,* v. *Fred. Miller,* 226 U. S. 491, 57 L. Ed. 148, Ad. Sheets L. Ed. No. 6, have decided contrary to the

law as laid down by this Court, and have decided as con-
tended for by the respondents.

We are bound by these decisions and the judgment of this
Court is that the judgment of the Court be affirmed.