FRASIER v. CHARLESTON AND WESTERN CAR. RY.

1. COMMON CARRIER—EVIDENCE—BILL OF LADING—WRITTEN INSTRU-
MENT.—Where a carrier set up a special contract limiting its liability
for damage to freight, consignee may show that the contract was
not binding on him, that it was not signed by shipper until after
injury, and then with the understanding that it would not be preju-
dicial to rights of consignee.

2. IBID.—PLEADINGS—FOREIGN LAWS.—In action in tort to recover dam-
ages for breach of carrier's duty in transporting freight from a
foreign State into this, when carrier sets up special contract, con-
signee may prove laws of foreign State to show invalidity or legal
effect of special contract without pleading them.

3. CHARGE—FOREIGN LAWS.—JUDGE should construe the laws of a for-
eign State.

4. COMMON CARRIER—FOREIGN LAWS—BILL OF LADING—FREIGHT—RATI-
FICATION—STOCK.—A contract between shipper of stock and carrier
to transport it from one State into another, upon suit by consignee
in the latter State for damages arising from its breach must be con-
strued according to the laws of the State in which executed, and in
this case the contract, executed in Georgia but not signed by shipper,
under the laws of that State, so much as limits the value of the
stock in case of loss is not valid, and mere acceptance of bill of
lading by shipper or payment of reduced freight by consignee does
not show ratification.

5. IBID.—FREIGHT—CONSTITUTION.—Act 23 February, 1903, 24 Stat., 81,
imposing penalty on carrier for failure to adjust and pay, or to
refuse to pay, claims for loss or damage to freight in specified time,
is constitutional.

6. IBID.—IBID.—STOCK—CHARGE.—REQUEST assuming existence of a con-
tract in dispute and not framed to submit the question that carrier
was not liable for damages if caused alone by consignee's negligence
in unloading animal, evidence being that the injury occurred while
consignee and carrier's agent was unloading, properly refused.

7. IBID.—IBID.—IBID.—IBID.—REQUEST eliminating question of carrier's
negligence in furnishing safe place to unload a horse and in use of
appliances, properly refused when those acts of negligence are
alleged, and reference to negligence in general terms in charge must
be construed to refer to acts of negligence alleged.

8. IBID.—IBID.—IBID.—NEGLIGENCE.—It is duty of carrier to furnish
suitable appliances for unloading stock and to use them with due
care, but even under a special contract making it the duty of shipper

to unload, if agent of carrier is present and assisting in unloading in unsafe way, it is negligence in carrier.

9. IBID.—RATIFICATION.—Request to the effect that shipper ratified contract limiting its liability by accepting reduced rate of freight, properly refused, because it assumed the existence of the special contract, which was denied.

Before J. E. McDonald, special Judge, Abbeville, October, 1904.   Affirmed.

Action by T. B. Frasier against Charleston and Western Carolina Railway Co. From judgment for plaintiff, defendant appeals.

*Messrs. S. J. Simpson* and *Parker & Greene,* for appellant. *Mr. Greene* cites: *Consignee ratified contract by accepting reduced freight:* 39 S. C., 61. *To be proved, laws of foreign State must be pleaded:* 68 S. C., 239; 66 S. C., 98; 9 Enc. P. & P., 542. . . *Liability of defendant should be determined by common law:* 68 S. C., 239; 4 Ency., 616; 115 Mass., 304; 106 U. S. (27 Law ed., 107). *Negligence of consignee in unloading the horse cannot be charged to defendant:* 27 Am. & Eng. R. R. Cas., 61. *Act of February,* 1903, *giving penalty for failure to adjust and pay claims for damages to freight, is unconstitutional:* 165 U. S., 150.

*Mr. Wm. N. Graydon,* contra, cites: *Laws of Georgia properly admitted in evidence without pleading:* 38 S. C., 199; Code of Proc., 189. *Judge should construe law of foreign State:* 38 S. C., 417; 39 S. C., 281, 375, 383; 42 S. C., 58; 59 S. C., 494. *Under Georgia law shipper must sign contract to be bound:* Code of Ga., 2068; 17 S. C., 838; 6 Cyc., 406, 407, 410, 411; 110 Ga., 665; 70 S. C., 494; 39 Mo. App., 88. *The penalty act of February, 1903, is constitutional:* 63 S. C., 169. *Carrier cannot exempt itself from liability for negligence in unloading stock:* 56 S. C., 136. *Ellis case relied on by appellant is overruled and criticised in* 174 U. S., 96; 185 U. S., 308.

December 20, 1905.   The opinion of the Court was deliv-
ered by .

MR. JUSTICE JONES.   The plaintiff brought this action for
damages for loss of a horse, which died from injuries re-
ceived in transportation from Augusta, Georgia, to Mt.
Carmel, South Carolina, and for the penalty of fifty dollars,
as provided by statute, for failing to adjust and pay said
claim within ninety days.   The jury rendered a verdict for
the whole amount claimed, including the penalty, and de-
fendant now seeks to reverse the judgment thereon.

The first exception alleges error in refusing to strike out
of the deposition of plaintiff's witness, James S. Carswell,
so much of the testimony therein as sought to show when
the contract of shipment was signed by him and why
the same was signed.   It is contended that plaintiff,
having introduced said contract in evidence as the
basis of his action, should not have been allowed to vary its
terms, or impeach it, or relieve himself of its obligation.
This exception is founded on a misconception of the circum-
stances.   The plaintiff did not make said contract the basis
of his action.   The defendant by its answer set up a special
contract limiting its liability, and evidence of such contract
was sought to be brought out by defendant on cross-
examination.   The plaintiff was properly allowed to offer
testimony that the said alleged contract was not binding on
plaintiff and that it was not signed by the shipper until ten
days after the shipment and after the injury to the horse,
and with the understanding that it would not be prejudicial
to plaintiff's claim for damages.

The second exception assigns error in allowing the plain-
tiff to offer in evidence the Code of Georgia, when he had
not pleaded the matters therein sought to be proved.   The
general rule is, "where a party seeks either to recover
or defend under a foreign law, such law must be
pleaded and proved like any other fact, since the
Court cannot *ex officio* take notice of the laws of a foreign

State." 9 Ency. Pl. & Pr., 542. The plaintiff's cause of action did not arise in Georgia, nor does the complaint seek to establish a right founded on the laws of Georgia. He sues in tort to recover damages arising from a breach of the carrier's general duty under the law to safely deliver the freight consigned to him, a breach which occurred in this State. The law of Georgia not being essential to plaintiff's cause of action, it was not necessary to plead the same. The plaintiff merely sought to avail himself of the law of Georgia in reply to defendant's answer setting up a special contract made in Georgia, in which case it was clearly admissible for plaintiff, without having pleaded the same, to prove the law of Georgia in order to show the invalidity of the legal effect of the special contract alleged by defendant. In the case of *Rosemand* v. *Southern Ry.*, 66 S. C., 92; 44 S. E., 574, the cause of action arose in Georgia and it was necessary to allege the laws of Georgia as one of the facts constituting plaintiff's cause of action. In the case of *Association* v. *Rice*, 68 S. C., 239, 47 S. E., 63, while it was not necessary for the plaintiff to anticipate a defense by way of counter-claim and allege in his complaint the law of Virginia, yet, inasmuch as the Code requires a reply to a counter-claim, if it is to be contested, it was necessary to plead in reply to the counter-claim the law of Virginia relied on to defeat said counter-claim. These cases cited, by appellant, illustrate the general rule stated, but do not apply to this case, which is governed by the rule stated in *Price* v. *R. R.*, 38 S. C., 210, 17 S. E., 732, which allowed plaintiff to offer evidence to invalidate a release set up in the answer without having pleaded in reply, because under sec. 189 of the Code plaintiff was not required to reply to such defense since the allegation of new matter in the answer, not relating to a counter-claim, is to be deemed controverted by the adverse party.

The third exception charges error in refusing defendant's motion for nonsuit on the ground that the evidence showed conclusively that the horse injured was not the property of the plaintiff at the time of the injury. There is no ground

for this exception. The witness, Carswell, who shipped the horse to plaintiff, testified that he sold the horse to plaintiff for $125, and plaintiff testified he gave that sum for the horse.

The fourth exception imputes error in charging the jury as follows: "The statute law of Georgia has been introduced in evidence, which provides that a common carrier cannot limit its common law liability, but they can make express contracts and be bound thereby. I charge you under that statute, and it construes the law of Georgia, that when a bill-of-lading is issued and is signed only by the common carrier, that the shipper is bound by all of the general provisions in that bill-of-lading whether signed by the shipper or not. But any special contract limiting its liability, there must be a signing of the contract by the shipper or he must expressly assent to the terms of the contract. The mere acceptance of a bill-of-lading by the shipper, and his acting upon it, will bind him so far as a general contract is concerned, but it will not bind him as to limiting the liability of the common carrier, but he must sign it at the time of shipping or expressly assent thereto. I charge you that is the law of Georgia. If you find from the testimony that at the time of this shipment this bill of lading was delivered to Mr. Carswell or some one acting as his agent and he shipped it under the bill-of-lading, he is bound by the general provisions of that bill-of-lading, and so is the plaintiff in this case." The specifications of error are: 1. That plaintiff could not avail himself of the law of Georgia without having pleaded the same. 2. That the charge was upon the facts, in violation of art. V., sec. 26, of the Constitution. 3. That it was competent to show a ratification of the contract after shipment, such as would bind the plaintiff.

The first specification above cannot be sustained for reasons given in considering the second exception.

The second specification cannot be sustained because the testimony as to the law of Georgia was documentary, and it was the duty of the Court to construe it. "While it is true

that what is the law of another State is a fact to be proven, *Horne* v. *McRae,* 53 S. C., 51, 30 S. E., 701, yet it is not a charge upon the facts for the Court to construe the language of documentary evidence such as the statute of another State." *State* v. *Whittle,* 59 S. C., 304; 37 S. E., 923.

There was no evidence of any act on the part of the plaintiff or his alleged agent which tended to show a ratification of the alleged special contract, unless such ratification could be inferred from the mere acceptance of the bill of lading containing the special contract signed only by the carrier. The evidence was undisputed that the shipper did not sign the contract until ten days after the shipment, when the shipper and the agent of defendant knew of the injury to the horse, and after representation by defendant's agent that such signing by the shipper would not hurt plaintiff's case. "A common carrier cannot limit his legal liability by any notice given, either by publication or by entry on receipts given or tickets sold. He may make an express contract and will then be governed thereby." In order, therefore, to make a valid contract in Georgia so as to bind the shipper to stipulations limiting the carrier's common law liability for injury not the result of the carrier's negligence, the shipper must expressly assent to such stipulations. "Mere acceptance of the bill of lading does not establish the shipper's assent to stipulations of this kind." *Central Railroad* v. *Hasselkus,* 17 S. E. Rep. (Ga.), 838.

The special contract sought to be established by defendant contained, among other things, a provision limiting liability for damages for loss or injury to the horse to $60. Such a contract when fairly made upon consideration is binding on the shipper. *Johnstone* v. *Railway Co.,* 39 S. C., 56, 17 S. E., 512. The Circuit Court, however, charged in effect that the existence and validity of the special contract set up in this case must be governed by the law of Georgia, where it was made, and that the shipper would not be bound by such stipulation in the bill of lading unless he expressly

10—73

assented thereto. We think the Circuit Court was correct in this, and that all exceptions by appellant based upon a contrary view must be overruled. The general rule on this subject is that clearly stated in *Scudder* v. *Union Nat. Bank,* 91 U. S., 406, 412.

"Matters bearing upon the execution, the interpretation or validity of a contract are determined by the law of the place where the contract is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy, such as bringing of suits, admissibility of evidence, statutes of limitations, depend upon the law of the place where the suit is brought." In *Levy* v. *Boas,* 2 Bailey, 219, approved in *Ayers* v. *Audubon,* 2 Hill, 604, it is declared, "that the *lex loci contracius* is to be observed in deciding on the nature, validity and construction of the contract; but the form of the action, the course of judicial proceeding and the time when the action must be commenced, must be directed exclusively to the laws of the State in which the action is brought." This general rule is well settled and understood, but the real contention in this case is whether the requirement by the Georgia law that the shipper shall expressly assent to the special contract, touches the validity of the contract or only the remedy upon it or the evidence of it. Upon a similar contract the Supreme Court of Massachusetts, in *Hoadley* v. *Northern Trans. Co.,* 115 Mass., 304, held that the question was one of evidence, and was to be determined by the law of the place where the suit is brought; while in Missouri, in the case of *Hartman* v. *Louisville etc. Ry. Co.,* 39 Mo. App., 88, it was held that the question related to the validity of the contract, and was governed by the law of the place of contract. We think this latter rule is the correct one. The contract was alleged to have been made in Georgia concerning a shipment from that State into South Carolina. It was, therefore, not to be fully performed in South Carolina, but was to be at least partly performed in Georgia, where made. It, therefore, falls within the general rule stated in

4 Elliott on Railroads, sec. 1506 : "That the law of the place where it is made and is to be performed, either in whole or in part, governs as to its nature, validity and interpretation." To treat the question as relating to the remedy, or the evidence of the contract, is to assume that a contract has been made to be evidenced and enforced, whereas the real question is whether any such contract exists.   By the law of Georgia, there is no contract limiting common law liability unless the shipper expressly assents thereto.

The seventh, ninth and thirteenth exceptions raise the question that the act of February 23, 1903, 24 Stat., 81, providing a penalty against a common carrier for failing to adjust and pay within a specified time the claim of a shipper for loss or damage to goods while in the possession of the carrier, is unconstitutional, in that it denies to common carriers the equal protection of the laws. This question has been recently discussed in the case of *Seegers* v. *Seaboard Air Line Rwy.*, decision filed November 13, 1905, and the constitutionality of the act was sustained, and we are satisfied that such conclusion is correct.

The appellant's fourteenth exception alleges error in refusing to instruct the jury as follows : "That under the contract offered in evidence in the case, it is provided that the owner or shipper shall unload the horse shipped, and if in so doing, through any act or omission on his part solely the horse was injured, the plaintiff cannot recover."   This request is faulty in assuming the existence of a special contract, a matter in controversy.   Furthermore, the provision in the alleged contract was "that the owner and shipper is to load, transfer and unload said stock, with the assistance of the company's agent or agents, at his own risk."   It is a primary duty of the carrier to load and unload freight, and it cannot transfer to the shipper or owner the consequences of its own negligence in these particulars. *Crawford* v. *Railway Co.*, 56 S. C., 149, 34 S. E., 80.   The complaint was based upon the charge that plaintiff's horse was injured through the negligence of the defendant in fail-

ing to provide a safe and suitable place at which to unload said horse, and in failing to provide a safe and suitable passageway or gangplank on which to unload said horse, and in carelessly leading said horse over a slick piece of iron. The evidence tended to show that the horse slipped and fell and was injured while being led from the car by plaintiff and defendant's agent over a slick piece of sheet iron used to connect the car with the platform. It may be true that if the injury to the horse was caused solely by the negligence of the plaintiff while unloading, there should not be a recovery, but the request to charge was not so framed as to submit such question.

The fifteenth exception charges error in refusing to instruct the jury in these words: "If the jury find that the defendant furnished a safe and suitable means of unloading the horse in question and that the injury did not occur on account of the unsafe condition of the same, the plaintiff cannot recover." This request was incorrect in eliminating the question whether the defendant was negligent in furnishing a safe and suitable place for unloading and in the use of the appliances at hand. The Court charged in lieu of such request, "That if they furnished safe and suitable means to unload the horse and an injury did occur, and did not occur from unsafe and unsuitable appliances, or from the negligence of the defendant, the plaintiff cannot recover." This modification of defendant's erroneous request to charge is not to be construed as leaving it open to the jury to consider acts of negligence on the part of the defendant not alleged in the complaint, but is to be construed with reference to the negligence alleged in the complaint.

The sixteenth exception assigns error in declining to charge the jury as follows: "That if the defendant had suitable facilities for unloading stock and the plaintiff failed to use the same, he cannot complain of the company on that account, but is himself responsible for any damage caused by a failure to use the same." The

request was properly refused, as it is the duty of the carrier not only to furnish suitable facilities for unloading stock, but to use such facilities with due care. The request to charge was doubtless framed under appellant's view that plaintiff had made a valid contract exempting defendant from all duty with respect to unloading, except to place at the shipper's disposal appliances which if used by him would have resulted in a safe unloading. There was some testimony that there were some timber or skids at hand, which if they had been placed as guards on the sides of the piece of sheet iron used as a gangway would have prevented the horse from slipping and falling between the car and the platform as happened, but if the use of the slick sheet iron for that purpose without such guards was negligent, it was the negligence of the defendant, present and with the assistance of the plaintiff attempting to perform its duty as a carrier.

The seventeenth exception raises the question that if Carswell, the shipper of the horse for plaintiff, signed the alleged special contract ten days after the shipment and injury to the horse, that would bind plaintiff as a ratification of the contract. We have already alluded to the testimony as to the circumstances under which Carswell signed the contract, viz: that it was after the injury and upon representation by defendant's agent that plaintiff's case would not be prejudiced thereby. It would have been error to have instructed the jury in accordance with appellant's contention.

The eighteenth exception is as follows: "Because his Honor erred in refusing the defendant's eleventh request to charge, as follows: 'If plaintiff, after receiving knowledge that the horse was shipped under a special contract limiting the liability to sixty dollars, and with knowledge that such horse was so shipped, accepted the reduced rate of freight and thereby obtained for himself an advantage, he cannot repudiate the contract without paying or offering to pay the full rate of freight. In other words, he cannot accept the advantages under said special

contract, with a knowledge of its terms, and repudiate the liabilities of such contract.' It is submitted that if the plaintiff with such knowledge accepted the reduced rate of freight, he thereby ratified the contract of shipment upon which it was based, and it would be unjust, unreasonable and illegal to allow him to recover more than the amount specified in said contract." The request was properly refused, as it assumed the vital question in issue as to whether there was any such special contract.

Such exceptions as may not have been specifically mentioned herein have been duly considered, and are controlled by the principles herein announced.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.