7544

BROWN v. WESTERN UNION TEL. CO.

1. Telegraph Companies—Mental Anguish—Foreign Laws.—A telegraph company transmitting a message from a point in this State to the City of Washington is liable in this State under its mental anguish laws for failure to deliver promptly in Washington, no matter where the delict occurred and although the law of liability for mental anguish without bodily injury is not of force in that jurisdiction.

2. Ibid.—Wilfulness—Pleadings—Issues.—In absence of allegations as to the law in a foreign State the Courts here will presume that the common law that. a telegraph company is liable for punitive damages for wilfulness or recklessness in delivering messages, is of force there. The evidence here as to the law on this point in the District of Columbia leaving the matter in doubt, that issue should have been sent to the jury.

3. Ibid.—Mental Anguish—Foreign Laws.—Where there is a delay in this State in sending a death message from a point here to a point in a foreign State not having' a mental anguish statute, recovery may be had here under our mental anguish statute.

4. Ibid.—Ibid.—Ibid.—Where the addressee of a death message not delivered in a foreign State is informed by letter of previous date of illness of deceased and leaves there after message should have been delivered for home of deceased, and there for the first time learns of the death, the suffering occurs here and the company is liable here for mental anguish under the laws here, whether the mental anguish law was in force in the foreign State or not.

5. Rehearing refused.

Before DeVore, J., Charleston, ——————— Reversed.

Action by Wm. Brown and Rosa Brown, his wife, against Western Union Tel. Co. From judgment on verdict directed for defendant, plaintiffs appeal.

*Messrs. Logan & Grace,* for appellants, cite: *This action is ex delicto:* 70 S. C., 87; 71 S. C., 386; 79 S. C., 162. *Case controlled by law of this State:* 80 S. C., 212; 79 S. C., 162. *Recovery liens as consequences of the negligence were here:* 34 L. R. A., 494; 10 Id., N. S., 256; 69 S. W., 427; 74 S. W., 751; 45 S. E., 938; 7 A. & E. Ann Cas., 1068;

75 S. C., 526; 129 U. S., 397; 73 S. C., 140; 56 L. R. A., 498.

*Messrs. Geo. H. Fearons* and *Mitchell & Smith,* contra, cite: *Tort was committed outside this State, no recovery for mental anguish:* 70 S. C., 87; 71 S. C., 389; 72 S. C., 516; 75 S. C., 512; 79 S. C., 160; 80 S. C., 207; 66 S. C., 96.

The opinion in this case was filed March 3, 1910, but remittitur held up on petition for rehearing until

April 9, 1910. The opinion of the Court was delivered by

Mr. Justice Gary. This is an action for damages, alleged to have been sustained by the plaintiff, Rosa Brown, through the wrongful acts of the defendant in failing to deliver the following telegram: "Summerville, S. C., January 22, 1908. Mrs. W. M. Brown, No. 72 Canal St., S. W., Washington, D. C. Come at once. Your sister died this morning. Frederika Alston." The appeal is from the charge of his Honor, the presiding Judge, directing the jury to render a verdict in favor of the defendant.

The complaint alleges that there was not only a failure to deliver the message within a reasonable time, but that it was not delivered at all. The defendant sets up as a defense "that, if there was any delay in the transmission of the said message, and damage caused thereby to the plaintiff, said delay occurred at Washington in the District of Columbia, and outside the State of South Carolina, in which district the law prevails which does not permit a recovery for mental anguish, unaccompanied by bodily injury." The act of 1901 (page 748) provides: "That all telegraph companies doing business in this State, shall be liable in damages for mental anguish or suffering, even in the absence of bodily injury, for negligence in receiving, transmitting or delivering messages."

The issue presented by the defense set up in the defendant's answer is similar to the question determined in the case of *Walker* v. *Tel. Co.*, 75 S. C., 512, 56 S. E., 38. In that case a telegram, which was sent from South Carolina to a father in Louisiana, informing him that his child was desperately ill, was received in such an altered condition as to mislead the father, who brought an action in South Carolina for mental anguish. The jury rendered a verdict in his favor, and the telegraph company appealed, one of the exceptions being as follows: "Because his Honor refused to direct a verdict, on the ground that the testimony showed that the cause of action did not arise in the State of South Carolina, and in holding: 'I shall leave it to the jury to say what point along the route, if any, it was changed and the words entered here, into the words in which it was delivered yonder'—whereas, his Honor should have held, as a matter of law, that the cause of action did not arise in South Carolina, because the uncontradicted testimony showed that the message was transmitted correctly from Edgefield to the relay office in Augusta, Ga., and from Augusta to Atlanta, Ga. This fact being uncontradicted, it was error to submit the question to the jury." In disposing of this exception the Court used the following language: "This question is a serious one. To answer that this tort of the defendant is to be so construed as to locate the duty of delivery to take place alone at New Orleans, La., would necessarily destroy plaintiff's right of action. It would virtually hold that it was the plaintiff's duty to be able to locate the spot at which the disaster to the telegram occurred. Such cannot be the law. The defendant relies upon the cases of *W. U. Tel. Co.* v. *James*, 162 U. S., 650, 16 Sup. Ct., 934, 40 L. Ed., 1105, and *W. U. Tel. Co.* v. *Pendleton*, 122 U. S., 347, 7 Sup. Ct., 1126, 30 L. Ed., 1187, to support the doctrine that the South Carolina statute cannot be made effectual beyond the limits of this State, in regard to transmission and delivery of telegrams sent from this State to be delivered in

Louisiana; but, as has been held, a contract made in Iowa for transmission of a telegram from a place in that State to a place in Missouri is governed by the law of Iowa, making the proprietor of the telegraph company liable for all mistakes in transmission. *Reed* v. *W. U. Tel. Co.*, 135 Mo., 661, 674; 37 S. W., 904, 906; 34 L. R. A., 492, 497; 58 Am. St. Rep., 609, the Court saying: "The contract was made in Iowa, and according to its terms it was to be partially performed in that State.' Does the circumstance that it was to be performed partly in Missouri exempt it from the laws of Iowa? We think most clearly not. The statute in no sense attempts to regulate interstate communication by telegraph. It has also been held thus in the case of *The Liverpool Steam Co.* v. *Phenix Co.*, 129 U. S., 397, 453; 9 Sup. Co., 469, 32 L. Ed., 788, that the nature, the obligation, and interpretation of a contract are to be governed by the law of the place where it is made, unless the parties at the time of making it had some other law in view. Our own State has also held, in *Frasier* v. *R. R. Co.*, 73 S. C., 140, 52 S. E., 964: 'That the law of a state where a contract is made and is to be performed, either in whole or in part, governs as to its nature, validity and interpretation.' "

In the case of *Balderston* v. *Tel. Co.*, 79 S. C., 160, 60 S. E., 435, a message was sent from Pennsylvania to the addressee at Aiken, S. C. The following language of the Court shows that it is immaterial at what point along the line the delay may have occurred: "No act of negligence or of wilfulness can be said to occur until there is a failure to put the message into the hands of the person to whom it is addressed. As was said in the case of *Lacer* v. *Tel. Co., supra; Telegraph Co.* v. *Lacer* (Ky.), 93 S. W., 34, 5 L. R. A. (N. S.), 751, a message is a thing 'which could not be hurt, much less destroyed, in its transmission. Nothing but the failure to deliver it in due time could affect its value to the sendee. There cannot be a segregation of liability on the undertaking. It is whole, single, and susceptible of becom-

ing fixed only in the final act contemplated.' Such is the
inference from our own cases of *Hellams* v. *Tel. Co.,* 70 S.
C., 83, 49 S. E., 12, and *Harrison* v. *Tel. Co.,* 71 S.
C., 386, 51 S. E., 119. It cannot be denied that such a doc-
trine is a just and reasonable one. The plaintiff cannot be
expected to determine the point on defendant's line where
the failure of duty occurred, nor do we think it consonant
with public policy to permit the defendant to show that the
message was delayed, or failed at some specific point on its
line, and thus make plaintiff's right to recover to depend
upon the laws of that place. Such a holding would, in nearly
every case, lead to much uncertainty, to say nothing of the
broad field that would thus be opened to fraud. What the
company contracts to do is to convey the information from
the sender to the addressee, and the failure to do this consti-
tutes the breach of duty for which it is held responsible."

In a note to *Howard* v. *Tel. Co.,* 7 Am. & Eng. Ann. Cas.
(Ky.), 1065, a number of cases are cited to sustain the prin-
ciple that, "where a contract is made in one State for the
transmission and delivery of a telegram addressed to a per-
son in another State, and the State wherein the contract is
made allows a recovery of damages resulting solely from
mental anguish, caused by an actionable breach of the con-
tract, but the laws of the State to which the message is
directed precludes a recovery of damages for mental suffer-
ing, unaccompanied by physical injury, the rights and liabili-
ties of the parties under the contract are determined by the
laws of the State where the contract is made." The principle
is thus stated in 1 Wharton's Conflict of Laws, 1082, 1083 :
"The general rule seems to be that a contract, made in one
State, or country, for the transmission of a telegram from a
point in that State, or country, to a point in another, is gov-
erned by the law of the State or country in which the con-
tract is made, and from which the telegram is sent, rather
than by that of the State in which it is received. By the
application of this rule it has been held that a statute of the

State from which the telegram is sent, making telegraph companies liable for all mistakes in transmission, and for all damages resulting from a failure to perform any of the duties required by law, is applicable, notwithstanding that the telegram is to be delivered in another State. Likewise, by the application of this general rule, the rule prevailing in the State from which the telegram was sent, permitting a recovery of damages for mental anguish, has been applied, though the rule was otherwise in the State in which the telegram was delivered."

These authorities sustain the following propositions: (1) That the law of the State where the contract is made, and is to be performed, either in whole or in part, governs as to its nature, validity and interpretation. (2) That the failure of the company to convey the information, from the sender to the addressee, and not the wrongful act of an agent at any particular point prior to the delivery of the message to the addressee, constitutes the delict. A message is *in transit*, not only while it is being sent over the wires, but during the time it is in the hands of the messenger for delivery, after it reaches the place where the addressee resides; and there is no sound reason why the company should be liable when the agent in the State from which the message has been sent, or an agent along the line, is guilty of negligence, and yet not be liable for an act of negligence on the part of the messenger to whom the telegram is handed for delivery by the agent of the terminal office. (3) That it would be against public policy to require the plaintiff to prove at what point on the defendant's line the failure occurred, or to permit the defendant to show that the message was delayed at some specific point on its line, and thus make the plaintiff's right of recovery dependent upon the laws of that place. (4) There cannot be a segregation of liability on the undertaking of the company, for the reason that it is whole and single, and by this construction the parties know, when they enter into the contract, by what law its nature, validity and inter-

pretation are to be governed. It is against public policy for the interpretation of a contract to be ambulatory and uncertain. The presiding Judge, therefore, erred, when he instructed the jury to find a verdict in favor of the defendant.

But, even if the delict took place within the District of Columbia, it does not follow that the ruling of the Circuit Judge was free from error. The complaint contains two causes of action—one for compensatory damages, based upon negligence, and the other for punitive damages, arising out of a reckless disregard of the plaintiff's rights. While the defendant interposed as a defense that the law prevailing in the District of Columbia does not permit a recovery for mental anguish unaccompanied by bodily injury, it does not plead that the defendant is exempt under the laws of said district from liability for malice, wantonness, or a reckless disregard of the rights of a party injured by the failure to deliver a telegram. The appellant's attorneys, however, rely upon the case of *Rosemand* v. *Railway,* 66 S. C., 91, 44 S. E., 574, which holds that: "In the absence of allegations, in an action arising in tort in another State, as to the rule of law applicable to the facts underlying the cause of action, the Court will presume that the common law prevails in that State."

The ruling of the presiding Judge in regard to punitive damages was as follows: "According to my view of this case, I think there is ample evidence to go to the jury here on the question of punitive damages. The undisputed evidence is that the telegram was received in Washington, and that the company, through one of its boys, undertook to deliver it; it being the duty of the telegraph company to deliver it to the party to whom it was sent, and the evidence shows that he not only did not deliver it to the party to whom it was sent but he did not even find the party's residence there, in a town where it was easy to have found it, but he goes to a number that he knew was not the number, and there he delivers it,

and delivers it, not to the party who was entitled to it, and not at No. 72. That is testimony upon which the jury might infer willfulness or recklessness, or a total disregard of the rights of others, but on this other question as to its being received in a reasonable time, I believe the testimony is that it got there at 2 o'clock, in ample time to have been delivered to this party in time for him to have taken the train and come here, and the evidence shows that there was no delict in the transmission; it got there in a reasonable time, and the delict occurred in that jurisdiction. They were possibly guilty of willfulness, but all that occurred outside of this jurisdiction, and under this evidence I will grant the motion. According to my judgment you cannot maintain this action here; I say the whole delict occurred in jurisdiction of Washington, D. C., and I hold that you cannot maintain that action here. Therefore I direct the jury to find a verdict for the defendant." The error on the part of the presiding Judge was in supposing that defendant is not liable, even at common law, for a reckless disregard of the rights of the party injured, whether the reckless conduct arose out of the failure to deliver a telegram, or to perform some other duty.

In the case of *Lewis* v. *Tel. Co.,* 57 S. C., 325, 35 S. E., 556, decided prior to the enactment of the statute, allowing damages for mental anguish unaccompanied by physical injury, it was held that the telegraph company was liable for punitive damages, for wantonness, willfulness, or reckless disregard of the rights of the party suffering injury. The decision was founded upon the right of recovery existing at common law.

It is true, the defendant introduced testimony for the purpose of showing that punitive damages, in such cases as the present, are not recoverable unless the principal participated in the wrongful act of the agent, or expressly or impliedly authorized or ratified it. The testimony in this respect was quite lengthy; and, after carefully considering it, we cannot say that it leaves the question free from doubt as to the law

of the District of Columbia. Therefore it, at least, should have been submitted to the jury.

There is another reason why there was error in directing the jury to find a verdict in behalf of the defendant. There was testimony tending to show that there was a delay of 30 minutes at Summerville, S. C., in forwarding the message, thus showing that the delay in part took place in this State, where the contract was entered into between the parties, and that the case in any event comes within the rule announced in *Fail* v. *Tel. Co.,* 80 S. C., 207, 60 S. E., 697, 61 S. E., 258, in which it was held that for a delay of two hours in this State at the initial office, in forwarding a message to be delivered in Georgia, damages for mental anguish were recoverable, even though they could not be recovered under the laws of Georgia.

There is still another reason why there was error in directing a verdict for the defendant: There was testimony to the effect that on the 24th of January, 1908, the plaintiff received a letter telling her of the illness of her sister, and that as soon as she received the letter she immediately left for Summerville, and on her arrival heard for the first time time that her sister was dead. It will thus be seen that her mental anguish, arising from the failure of the defendant to deliver the message promptly, was suffered in this State, and that in any event the delict arose here.

It is the judgment of this Court that the judgment of the Circuit Court be reversed, and the case remanded to that Court for a new trial.

April 9, 1910. PER CURIAIM. After careful consideration of the petition herein, this Court is satisfied that no material question of law or fact has either been overlooked or disregarded.

It is, therefore, ordered that the petition be dismissed and that the order, heretofore granted staying the remittitur, be revoked.