7709

M. C. HEATH & CO. *v.* POSTAL TELEGRAPH-CABLE CO.

1. TELEGRAPH COMPANIES—DAMAGES.—Where a telegraph company makes an error in the transmission of a message which causes the addressee to buy a lot of cotton he would not have bought, it is the duty of the addressee to sell the cotton as soon after he discovers the mistake as a reasonable, prudent person would have done, to minimize his damages.

2. IBID.—IBID.—PRESUMPTIONS.—Where a telegram is so changed in transmission as to direct addressee to purchase a lot of cotton when

it should have informed him of such purchase, the presumption is that the addressee in purchasing has been damaged to the extent of the value of the purchase less its market value.

3. IBID.—THE MEASURE OF DAMAGES for negligence in transmitting a telegram informing addressee of the purchase of a lot of cotton by which he was caused to buy another lot is the difference between the buying and selling price and expenses of purchase and sale less any amount that may have been saved by use of due diligence and care.

4. IBID.—PRESUMPTIONS—NEGLIGENCE—ISSUES.—Whether the presumption of negligence in the transmission of a message by leaving off a letter was rebutted by evidence of the carrier is for the jury.

5. IBID.—IBID.—A telegram filed at a telegraph office in the New York Cotton Exchange, written in the language of the cotton trade, in terms with which an office of the company there situate should be familiar, is notice to the company that the damages arising from changing its form so as to direct purchase of cotton instead of informing of such purchase would be the difference between the buying and selling price of the cotton and expenses connected therewith.

6. CHARGE—BURDEN OF PROOF.—Calling the attention of the jury to a special allegation in a complaint and instructing them in general that the plaintiff must prove the allegations in his complaint by the preponderance of the evidence is sufficient, where such facts were not seriously controverted, to inform the jury that such allegations must be proved by the preponderance of the evidence.

7. IBID.—CONFLICT OF LAWS.—The law of the State where the contract for the transmission of a commercial telegram is made and where it is to be partly performed, governs as to its nature, validity and interpretation.

Balderston v. Tel. Co., 79 S. C., 160, and Harrison v. Tel. Co., 71 S. C., 386, distinguished from this case.

Before HYDRICK, J., Richland, March, 1908.  Reversed.

Action by M. C. Heath & Co. against Postal Telegraph Cable Co. From judgment for plaintiff, defendant appeals on the following exceptions:

I. "That his Honor erred in refusing the motion for a nonsuit, made by defendant at the close of plaintiff's testimony, upon the ground that there was no allegation in the complaint, and no testimony to show that plaintiff either

paid or promised to pay anything for the transmission of the message, or gave any other consideration, and that his Honor erred in allowing plaintiff to amend his complaint by inserting an allegation to the effect that he paid for the transmission of the message and to introduce testimony to this effect.

"When his Honor should have ruled that in the absence of an allegation in the complaint that the plaintiff paid or promised to pay for the transmission of the message, or gave other consideration, that it stated no cause of action whatsoever and that consequently there was nothing to amend, and that there was no evidence tending to show any consideration to the defendant, and should have granted the nonsuit on these grounds.

II. "That his Honor erred in refusing the defendant's motion for a direction of a verdict in its favor, made upon the (third) ground, to wit:

" 'That the uncontradicted testimony shows that the plaintiff has suffered no damage recoverable in law—in that it appears that as a consequence of the omission of the letter the plaintiff purchased certain cotton deliverable in May, at the then market price, and there can be no legal damage in exchanging money for its legal equivalent. And the plaintiff cannot hold the defendant responsible for his subsequent sale of this cotton at a lower price.'

"Whereas, his Honor should have held on this point that there was no testimony tending to show that the plaintiff had suffered any legally recoverable damage, as a direct consequence of defendant's negligence, and should have directed a verdict for defendant on this ground.

III. "That his Honor erred in refusing the defendant's motion for a direction of a verdict made upon the (third) ground that there was no evidence tending to show damage to plaintiff; when his Honor should have held that there was no evidence tending to show that the plaintiffs had paid out any money or suffered any pecuniary loss as the direct con-

sequence of defendant's negligence, as alleged in the com-
plaint, and should have directed a verdict for defendant on
this ground.

IV. "That his Honor erred in charging without qualifica-
tion the plaintiff's third request to charge, to wit:

" 'I charge you that if you find for the plaintiff the
measure of damages should be the difference in the price
at which plaintiffs purchased the cotton, if they did pur-
chase, and the price at which they sold the cotton, if they
did sell, upon discovering the error in the telegram, and the
expenses of purchase and sale, if there were such expenses.'

"Whereas, his Honor should have qualified the charge
by adding that the plaintiffs must have acted reasonably,
in the exercise of due care and caution, in selling the said
cotton contract after discovering the error in the telegram,
and that the jury must find that they did act reasonably and
that they could not have avoided the consequence of the
error in transmission by holding the cotton contract, in
order to hold the defendant responsible for the loss on
such sale.

V. "That his Honor erred in refusing the defendant's
motion for the direction of a verdict in favor of the defend-
ant, upon the following (second) ground, to wit:

" 'That the uncontradicted evidence shows that the
defendant was guilty of no negligence, but, on the contrary,
exercised due care, and consequently the plaintiff cannot
recover. And that the defendant has by its uncontradicted
testimony rebutted any presumption that might arise from
the mere proof of the omission of the letter in transit.'

"Whereas, his Honor should have granted the motion
and directed a verdict upon this ground, as the testimony
admitted of but the one inference that the defendant was
guilty of no negligence.

VI. "That his Honor, the presiding Judge, erred in
admitting, over defendant's objection, the following testi-

mony of defendant's witness, D. D. Walters, on cross-examination:

" 'Do you understand what "five May" means? Mr. Lyles: We object, he is trying to bring notice; that does not tend to discredit the witness. The Court: Tends to show here is one operator who might know; I don't know. Mr. Lyles: Knowledge of one man don't impute knowledge to another. * * * The Court: I think it competent. Mr. Nelson: Answer the question. I would understand by this telegram five May contracts. Contract meaning bales? I don't know whether means bales. Don't you know contract means bales? No, sir.'

"Whereas, his Honor should have ruled such testimony irrelevant and incompetent, and should have excluded the same as tending to mislead and confuse the jury, since the knowledge of this man, who did not handle the message, had nothing to do with the case.

VII. "That his Honor erred in refusing the defendant's motion for a nonsuit, made at the close of plaintiff's testimony, upon the ground that the damages alleged and proven were special damages, and that there was no evidence to show that the defendant had such notice of the special circumstances at the time of the receipt of the telegram as would make it liable for such damages. When his Honor should have ruled that such damages were special damages, as could not reasonably have been said to have been in the contemplation of the parties at the time the message was received for transmission, and that there was no evidence tending to show that the defendant, by its agent, had any sufficient notice to make it liable therefor.

VIII. "That his Honor erred in refusing defendant's motion for a direction of a verdict in favor of defendant, made upon the (first) ground, to wit:

" 'That the damages alleged and proven by plaintiff are not such as could fairly be said to have been in the contemplation of the parties at the time of the making of the con-'

tract in New York City and are special damages, and there is no evidence that the defendant, or its agents, had any sufficient notice to make such damages recoverable.'

"When his Honor should have ruled that the damages alleged and proven were special damages, and that there was no evidence tending to show that the defendant, or its agents had any sufficient notice to make such damages recoverable, and should have granted the motion to direct a verdict on this ground.

IX. "That his Honor erred in refusing the defendant's (second) request to charge, to the effect that the damages alleged in the complaint and proven by the testimony were special damages, and could not be recovered unless the jury should find that the defendant had notice of the special circumstances out of which such damages arose.

"When his Honor should have ruled that this request stated a correct proposition of law, and should have charged the same.

X. "That his Honor erred in charging the jury as follows:

" 'Now, there are two kinds of damages, what are known as general damages and as special damages. The difference between those two kinds is very clearly and succinctly stated in the case of *Hays* v. *Telegraph Co.*, from which I am going to read you:

" '1. Damages which may be fairly and reasonably considered as naturally arising from a breach of contract, according to the usual course of things,' are known as general damages, and 'are always recoverable.'

" '2. Damages which would not arise in the usual course of things from a breach of contract, but which do arise from circumstances peculiar to the special case. are not recoverable unless the special circumstances are known to the person who has broken the contract. These are called special damages. * * * Where special damages arise out of special circumstances, before you can recover you must

allege and prove that the party who breached the contract knew the special circumstances out of which special damages would arise. Of course, if they knew of them and entered into the contract in contemplation of them, they would be liable to pay those damages. You understand what general damages are, and what special damages are. I charge you, as a matter of law, that the plaintiff is entitled to recover general damages without allegations as to those in the complaint, but not entitled to recover special damages unless it is alleged and proved that the defendant knew of the special circumstances out of which special damages would arise. It is a question of fact for you to say whether under the definition of general and special damages that I have given you, whether these are special or general damages, and whether the defendant knew the special circumstances out of which special damages would arise, in the event you find there was special damages.'

"Whereas, his Honor should have charged the jury that the damages alleged in the complaint and proven by the testimony were special damages, and that the defendant could not be held liable for such damages unless the jury should find that it had notice of the special circumstances out of which they arose, and should not have left it to the jury to say whether or not the damages alleged and proven were general or special.

XI. "That his Honor, the presiding Judge, erred, as a matter of law, in refusing the defendant's motion for a new trial, made upon the ground that his Honor had erred, as a matter of law, in failing to charge the jury that the damages alleged and proved were special damages and could not be recovered unless the jury found that the receiving agent of the defendant in New York City had notice of the special circumstances, and that his Honor had erred in leaving it to the jury to say whether or not these damages were general or special.

"Whereas, his Honor should have granted the motion for a new trial upon this ground.

XII. "That his Honor, the presiding Judge, erred in admitting, over defendant's objection, the following testimony of plaintiff's witness, M. C. Heath:

" 'What is the meaning of that telegram? That I had wired. Mr. Lyles: We object, until it is shown that it was known to the defendant company. Mr. Nelson: Did you deliver that? I delivered it to the operator of the Postal Telegraph Company, at his receiving desk on the floor of the Cotton Exchange. Mr. Lyles: They must prove notice to us; until they do the meaning of this telegram is not competent. * * * "Wired Vick buy five May for your account;" did that mean you had wired to buy or your office to buy? The Court: Admitted, subject to showing that the telegraph people knew what that mean. (Mr. Nelson cited *Hays* v. *Telegraph Company*.) The Court: Go ahead; I will admit the question. Mr. Lyles: We object. Do you admit it subject to their proving that we had actual notice? The Court: I will admit it generally. I think the telegram on its face shows. * * * Mr. Nelson: What is the meaning of "five May?" Mr. Lyles: Your Honor understands us as objecting? The Court: Yes, sir. Means to buy five May and forward May delivery. What does "Wired Vick buy five May for your account" mean? Mr. Lyles: We object. Mr. Nelson: What does that telegram mean, "Wired Vick buy five May for your account?" The telegram explains itself on the face of it. I wired our office in Columbia I had wired Vick to buy for their account five hundred bales May future, which they did. I wired them. * * * Is there any other business than cotton done on the New York Cotton Exchange, trading in cotton? Mr. Lyles: We object. The Court: I think it competent, whether he knows of any other business done on the Cotton Exchange. Mr. Lyles: If he knows of no other messages sent from the Cotton Exchange except messages to buy cotton. Mr. Nelson:

Any other business than the purchase or sale of cotton? I should say, in a general way, no other business is supposed to be done. The telegraph company keeps an office on the floor of the Exchange? Yes, sir. Tell us what, on the floor of the Exchange, the term "five May" means? Any operator, any of their employees, would know that meant five hundred bales of May future. Mr. Lyles: We object, and move to strike it out. The Court: I will admit it, if he knows it to be the fact. * * * What does the great part of your telegraphic business concern? Mr. Lyles: We object. The Court: I will admit it. Mr. Nelson: The greater part of your telegraphic business? Relative to our cotton business; the bulk of our telegrams is relative to our daily business.'

"Whereas, his Honor should have ruled that until the plaintiff had brought home notice of the special meaning of the telegram to the defendant, or its agents, testimony of such special and peculiar meaning, other than appeared from the face of the telegram itself, was incompetent, and that this testimony of the peculiar meaning of the telegram did not tend to show that the defendant, by its agents, had notice of the peculiar meaning beyond that which appeared from the face of the telegram itself, and was consequently incompetent and irrelevant. And his Honor should have excluded the testimony on these grounds.

XIII. "That his Honor, the presiding Judge, erred in admitting over defendant's objection, and in refusing to strike out upon motion of defendant, the following testimony of the plaintiff's witness, M. C. Heath:

" 'Mr. Nelson: Some commissions I want to bring out. Give the items that make that $400.00. 65 per bale for cotton; commission $75.00. What commission was charged? 15c per bale, or $15.00 per hundred bales. Mr. Lyles: We object on the same line; that is special damages; he had not shown it; I move to strike it out. The Court: I will have to charge the jury unless they bring notice home to the

defendant company that that damage entered in the contemplation of the party at the time of sending this message he cannot recover.'

"Whereas, his Honor should have ruled such testimony incompetent and irrelevant, as tending to prove special damage without first bringing home notice to the defendant company at the time of the making of said contract, and should have refused to admit the said testimony, and should have struck the same out upon motion of the defendant.

XIV. "That his Honor erred in admitting, over defendant's objection, the following testimony of plaintiff's witness, J. T. Gray:

" 'You handle a great many telegrams? Good many. A telegram reading this way: "Wired Vick buy five May for your account. Buy any spots that look reasonable," coming from the New York Cotton Exchange; what would you take that to mean? Mr. Lyles: We object. They are attempting to put a meaning on this contract beyond that which appears on its face, without bringing home notice to us. Mr. Nelson: Mr. Heath testified that the Postal is allowed to keep an office on the floor of the Cotton Exchange, and that the operators have access there. The Court: I will admit the testimony. Mr. Nelson: What would you take that to mean; what would "five May" mean? Knowing that the telegram came from the Cotton Exchange, I would take it to be 500 bales of cotton.'

"Whereas, his Honor should have ruled such testimony incompetent and irrelevant until the plaintiff had brought home notice to the defendant in this particular case of the peculiar meaning of the telegram in question, and there being no evidence tending to bring home such notice to the defendant, should have upheld defendant's objection to the admission of this testimony, tending to give to the telegram a peculiar meaning beyond that which appeared from the face thereof, and tending to mislead and confuse the jury.

XV. "(a) That his Honor erred in failing to charge the jury to the effect that, as a condition precedent to plaintiff's recovery, he must prove that in the contract for future delivery of cotton, made in New Orleans, and out of which plaintiff's alleged damage arose, it was the *bona fide* intention of both the parties to the said contract, at the time of making the same, that the said cotton should be actually delivered in kind by the party contracting to sell and deliver the same, and should be actually received in kind by the party contracting to receive the same at the future period mentioned and specified in said contract.

"This being a material allegation in the complaint, denied by the answer, was a material issue in the case, and his Honor should have charged the jury on this issue, and he erred in failing to do so.

(b) "That his Honor erred in failing to charge the jury to the effect that the plaintiff bore the burden of proving, as a condition precedent to any recovery in this case, that at the time of making the contract for future delivery of cotton in New Orleans, out of which plaintiff's damage is alleged to have grown, it was the *bona fide* intention of both parties thereto, that the said cotton so agreed to be sold and transferred should be actually delivered and received in kind by the said parties thereto, at the future period mentioned therein.

"This being a material allegation of the complaint, denied by the answer, was a material issue in the case, and his Honor should have charged the jury on this issue, and he erred in failing to do so.

XVI. "That his Honor, the presiding Judge, erred in refusing the defendant's motion to direct a verdict for the plaintiff for the amount paid by the plaintiff for the transmission of the message, made upon the following grounds:

" 'That the uncontradicted testimony shows that the message was sent from the City of New York, in the State of New York, and was written on a blank of the defendant

company, upon which was an agreement that the message was sent as an unrepeated message at a lower rate than repeated messages, and that in consideration of the lower rate the plaintiff assented to the stipulation upon the said blank whereby the parties agreed that in case of error in the transmission of the message, due to unavoidable accident or to the negligence of the defendant company or its servants, his recovery would be limited to the amount paid for the transmission of the message. That the uncontradicted testimony shows that the law of the State of New York is that this act of the defendant in signing the telegram written upon the blank as aforesaid constitutes a contract between the plaintiff and the defendant good and binding by the said law and limits his recovery to the amount paid for the transmission of the telegram. There being no gross negligence or wilfulness alleged or proven on the part of the defendant company, and that the uncontradicted testimony shows that the law of the State of New York upholds the stipulation above referred to, although the sender may not have read the same, in the absence of fraud, and allows the plaintiff to recover nothing beyond the amount paid for the transmission of the telegram, in the absence of testimony showing gross negligence or wilfulness.'

"Whereas, his Honor should have held that these grounds stated a correct proposition of law and should have granted the motion and directed a verdict as requested.

XVII. "That his Honor erred in refusing the defendant's request to charge the jury, made at the close of all the testimony, and taken down by the stenographer, in the following words:

" 'Mr. Lyles: I will make a motion to charge the jury— I have not got it included in my requests to charge—I make the further request to charge by the Frasier case in '73, the Court there construed the foreign law. You have

ruled that this foreign law has nothing to do with the case. I request the Court to charge the jury that the foreign law does govern the question of the validity of this contract. I understand your Honor refuses that? The Court: Yes, sir. The point can be raised either by a request to direct a verdict, or request to charge. You can put it on the record, so if I am in error you can correct it.'

"Whereas, his Honor should have rule that this request to charge stated a correct proposition of law, and should have charged the jury that the validity of the contract limiting the plaintiff's recovery in this action to the agreed amount, to wit, the amount paid for the transmission of the message, was to be determined by the law of the State of New York, where it was admitted that the contract in question was entered into and partly performed.

XVIII. "That his Honor erred in charging the plaintiff's fifth request to charge, to wit:

"'No matter what the contract on the back of the telegraph blank is, it would not relieve the telegraph company from any act of negligence on its part. Those who serve the public cannot relieve themselves by any contract by a release from negligence, and I charge you that when an error is made in the transmission of a telegram, it raises a presumption of negligence on the part of the telegraph company.'

"Whereas, his Honor should have charged that the contract on the face and back of the telegram in question was good and binding in law, and limited the plaintiffs in this case to the recovery of the amount paid by them for the transmission of the said telegram, and should have refused to charge this request for plaintiffs."

*Messrs. Lyles & Lyles*, for appellant, cite: *Validity of contract determined by lex loci contractus:* 2 Bail. 219; 73 S. C. 142; 73 S. C. 465; 75 S. C. 512; 49 S. E. 952; 52 S. E. 850; 34 L. R. A. 492; 89 Am. St. 666; 22 Ency.

1352; 27 Ency. 1042. *Limitation of liability is governed by same law:* 73 S. C. 142; 65 S. C. 101; 5 S. C. 370; 65 S. C. 103; 71 S. C. 509. *This contract must be here enforced by that law:* 68 S. C. 236; 153 Mass. 553; 128 Pa. St. 217; 56 L. R. A. 486; 80 Nisi P. R. N. S. 263; 31 Fed. 516; 63 Fed. 266; 20 Am. R. 589; 48 N. W. 926; 57 Am. R. 589; 7 S. E. 916; 2 Am. R. 395; 24 At. 79; 6 Mass. 358; Parmalee Wharton Conflict of Laws 1104; 6 Cyc. 411; 50 N. H. 253; 45 S. C. 369; 81 S. C. 29; 77 S. C. 483; Joyce on Elec. Law. sec. 782. *The rule in this State is that the stipulation on the back of telegraph messages limiting recovery for an unrepeated message is binding:* 5 S. C. 358; 19 S. C. 71; 65 S. C. 103; 71 S. C. 303, 506; 75 S. C. 524; 39 S. C. 55; 73 S. C. 145; 75 S. C. 170, 324. *That the cause of action is ex delicto does not affect this position:* 5 S. C. 370; 70 S. C. 87; 71 S. C. 386, 510; 72 S. C. 516; 74 S. C. 493; 75 S. C. 512; 97 S. C. 160; 80 S. C. 207; Parmalee Wharton Conflict of Laws 1104; Croswell on Electricity 407; 56 L. R. A. 486. *Plaintiff suffered no legally recoverable damages:* 53 S. C. 410; 70 S. C. 16; 19 S. E. 100; 63 L. R. A. 803; 47 S. W. 560; 24 N. W. 45; 25 N. W. 838. *Defendant is guilty of no negligence:* 19 S. C. 81; 5 S. C. 858; 61 S. C. 63. *Defendant is not liable for special damages because it had no notice:* 71 S. C. 211; 17 Am. R. 452; 29 Ind. 243; 32 Barb. 530; 48 Fed. 810. *Whether damages were general or special should not have been sent to the jury:* 71 S. C. 85; 17 Am. R. 452; 72 S. C. 116; Jones on Tel. Cos. sec. 512; 32 Barb. 530; 19 Am. St. R. 55.

*Messrs. Nelson, Nelson & Gettys,* contra, cite: *The Court correctly stated the measure of damages:* 70 S. C. 16. *Error in transmission raises a presumption of negligence:* ·Jones T. & T. Cos. secs. 268, 278, 310, 311; 27 Ency. 1026-1031; 70 S. C. 16. *Recovery on message couched in business terms is not limited to nominal damages:* Jones T. &

T. Cos. sec. 535. *The law of New York does not apply:* 79 S. C. 160; 72 S. C. 531, 526. *Carrier cannot relieve itself from negligence by any contract on back of paper:* 19 S. C. 364; 26 S. C. 91; 56 S. C. 148; 75 S. C. 512; Jones T. & T. Cos. secs. 37, 333, 376, 377, 378; 75 S. C. 526. *When law of foreign State should not be enforced:* 60 S. E. 355; 107 S. W. 560.

November 7, 1910. The opinion of the Court was delivered by

JUDGE SHIPP, *Acting Associate Justice.* This is an action to recover damages alleged to have resulted from the erroneous transmission of a telegram. M. C. Heath, one of the plaintiffs in this action filed with the defendant company at its office on the floor of the New York Cotton Exchange, on January 9, 1907, a telegram addressed to the plaintiff firm, reading: "Wired Vick Buy five May for your account. Buy any spots that look reasonable." The telegram as delivered in Columbia, S. C., read: "Wire Vick buy five May for your account. Buy any spots that look reasonable." On receipt of this message the plaintiff firm wired Heyward, Vick & Clark, of New Orleans, to buy for it five hundred bales of cotton for May delivery. Upon discovering the mistake in the telegram complained of, plaintiffs telegraphed Heyward, Vick & Clark at New Orleans, the following morning, to sell the five hundred bales which had just been purchased by reason of the receipt of said erroneous message. The cotton bought by plaintiffs, on receipt of said erroneous telegram, was resold the next day at a loss of $325, difference in the market price, and $75, commissions paid for brokerage, making a total loss of $400.

The exceptions on which this appeal is based are numerous. It appearing that the first exception has been abandoned, we shall proceed with the consideration of the others.

234    Heath & Co. *v.* Telegraph Cable Co.

Second exception. The plaintiffs by reason of the erroneous message purchased five hundred bales of cotton which would not have been purchased except for said message. It was the duty of the plaintiffs to dispose of the cotton as a reasonable, prudent person would under like circumstances, in order that they might minimize the damage done them by reason of defendant's mistake. If plaintiffs had held the cotton for a speculation they would have done so at their own peril, for had they done so, and cotton had gone down in price, they could have been held to be the authors of their own misfortune.

Third exception. The telegram shows on its face that *something* had been purchased, and in its changed form, it was an instruction to purchase that *something,* which certainly was notice to the defendant that if the word "wired" were changed to "wire," the plaintiffs would, in all probability, be possessed of two *somethings* instead of the one already purchased. It also shows on its face that that *something* had been purchased, as the original message read, or would be purchased as the erroneous message read, by a third party, and the presumption would be that such party was not making the purchase gratuitously.

Fourth exception. We think, as counsel for respondents say in their argument, that if this third request to charge needed qualification, the defendant's fourth request to charge, which was given, qualified it. The defendant's fourth request to charge is as follows: "If the jury shall find that the defendant has been guilty of negligence in causing the mistake in the transmission of the telegram, nevertheless the plaintiff is under a duty to use reasonable efforts to minimize his damages, and cannot recover any damages that might have been avoided by the use of reasonable care and diligence, and by the exercise of proper precautions."

Fifth exception. The uncontradicted evidence shows that the telegram as filed with the defendant company for transmission read "Wired," whereas the message as delivered read "Wire." The former indicated information that something had been done; the latter was a command or request to do that something. The whole appearance of the message was changed in transmission—a totally different meaning conveyed. The message was filed with the company for transmission in a whole condition, in the exact form it was intended to be sent by the plaintiffs, it was delivered in a defective and altered form. This unquestionably made out a *prima facie* case and it became a question of fact for the jury to say if it had been rebutted.

Sixth to fourteenth exceptions (inclusive). These exceptions impute error to the trial Judge in leaving the question of general and special damage to be determined by the jury, and in admitting evidence tending to show special damage. It seems to us that a telegram filed with the defendant company, at its office on the New York Cotton Exchange, written in the language of the cotton trade, using terms with which an office of the company situated at such a place was familiar or should have been familiar, was intelligible to defendant's agent at such an office and that the damage complained of was the reasonable, fair and natural result of the incorrect message as sent. Therefore, if the trial Judge erred in submitting the question of general or special damages to the jury or in admitting evidence tending to show special damages, it was error in favor of the defendant company, giving it two chances to rebut plaintiff's case, whereas it should have had but one.

Fifteenth exception. The trial judge called the attention of the jury to the allegation in the complaint to the effect that the cotton was bought and sold for actual delivery, etc.

Then, in his charge, he told the jury that plaintiffs must prove the allegations of the complaint by the greater weight of the evidence. This seems to us sufficient where such facts were alleged and proven and not seriously controverted.

Sixteenth, seventeenth and eighteenth exceptions. These exceptions impute error to the Circuit Judge in not holding that the law of the State of New York in which the contract referred to in the pleadings was executed and partly to be performed, must be enforced in this jurisdiction. The question was squarely presented by the pleadings in this case, the answer of defendant pleading that the contract was made in New York, was partly to be performed there, and setting out that the New York law upheld such contracts. While it is true that the action against telegraph companies for non-delivery, delayed delivery or delivery of an erroneous message is an action *ex delicto*, and that a cause of action always arises at the place where the message is to be delivered and sometimes elsewhere, yet it is equally true that in actions *ex delicto* arising out of contract, all questions affecting the nature, validity and interpretation of the contract are to be governed by the law of the State in which the contract was made and is to be performed in whole or in part. Such has been the rule in this State in all cases in which the question was presented by the pleadings.

In the recent case of *Brown* v. *Tel Co.*, 85 S. C. 495, 67 S. E. R. 146, Mr. Associate Justice Gary delivering the opinion of the Court, after reviewing many authorities, says: "These authorities sustain the following propositions: (1) That the law of the State where the contract is made, and is to be performed, either in whole or in part, governs as to its nature, validity and interpretation. (2) That the failure of the company to convey the information, from the sender to the addressee, and not the wrongful act of an agent at any particular point prior to the delivery of

the message to the addressee, constitutes the delict.   A message is in transit, not only while it is being sent over the wires, but during the time it is in the hands of the messenger for delivery, after it reaches the place where the addressee resides; and there is no sound reason why the company should be liable when the agent in the State from which the message has been sent, or an agent along the line, is guilty of negligence, and yet not be liable for an act of negligence on the part of the messenger to whom the telegram is handed for delivery by the agent of the terminal office.   (3)  That it would be against public policy to require the plaintiff to prove at what point on the defendant's line the failure occurred, or to permit the defendant to show that the message was delayed at some specific point on its line, and thus make the plaintiff's right of recovery dependent upon the laws of that place.   (4)  There cannot be a segregation of liability on the undertaking of the company, for the reason that it is whole and single, and by this construction the parties know, when they enter into the contract, by what law its nature, validity and interpretation are to be governed.   It is against public policy for the interpretation of a contract to be ambulatory and uncertain. The presiding Judge, therefore, erred when he instructed the jury to find a verdict in favor of the defendant."

In the case of *Brown* v. *Tel. Co., supra,* a message was sent from South Carolina to Washington, D. C., and it was contended that as the law of the District of Columbia did not permit a recovery for mental anguish disconnected with bodily injury, there could be no recovery, but it was held that as the contract was executed in South Carolina and was to be partly performed here, the law of South Carolina must be applied.   In speaking of the same principle in *Gilliland and Gaffney* v. *Southern Ry. Co.,* 85 S. C. 26, 67 S. E. R. 22, Mr. Associate Justice Woods says: "The contract of shipment was made in Georgia and required part performance in that State and part in South Carolina.   The

rule which prevails in most jurisdictions, including this State, is that under such conditions any question as to the nature, validity and interpretation of that portion of the contract to be performed partly in Georgia and partly in South Carolina, namely, the portion that related to safe transportation from the point of delivery to the point of destination, would be determinable under the laws of Georgia unless there was evidence of the intention of the parties that a different law should be applied. *Frasier* v. *C. & W. C. Ry.*, 73 S. C. 140, 52 S. E. 964; Wharton on Conflict of Laws, 1062-1064."

In *Walker* v. *Tel. Co.*, 75 S. C. 512, 56 S. E. 38, where a telegram was sent from South Carolina to Louisiana, the Court held that the cause of action arose in South Carolina and was governed by her laws. Chief Justice Pope delivering the opinion, at page 526, says: "Our own State has also held in *Frasier* v. *R. R. Co.*, 73 S. C. 140, 52 S. E. 964: 'That the law of a State where the contract is made and is to be performed in whole or in part, governs as to its nature, validity and interpretation.' " The cases of *Balderson* v. *Tel. Co.*, 79 S. C. 160, 60 S. E. 435, and *Harrison* v. *Tel. Co.*, 71 S. C. 386, 51 S. E. 119, seem to conflict with the above views, but in neither of those cases was the foreign law pleaded and the question here at issue was not squarely presented.

We think there was error in refusing to apply the law of New York and that there should be a new trial.

Let the exceptions be set out in the report of the case.

It is the judgment of this Court that the judgment of the Circuit Court be reversed.

JUDGES S. W. G. SHIPP and J. W. DEVORE *sat in this case*, MR. CHIEF JUSTICE JONES *being disqualified.*

MR. JUSTICE WOODS, *concurring.*    I concur in the judgment of reversal.    The telegram in this case related to a

commercial matter, and there is no statute of this State, changing the common law with respect to the liability of telegraph companies for negligence in receiving, transmitting or delivering such a message. Therefore, as stated in the opinion of Acting Associate Justice Shipp, the common law rule on the subject of conflict of laws applies; and the liability of the defendant company must be measured by the law of the State of New York, where the contract for transmission was made and partly performed. The rule applicable in mental anguish cases is not involved, and therefore I express no opinion on the question whether the statute making telegraph companies liable for mental anguish caused by "negligence in receiving, transmitting or delivering messages" would require the application of the law of this State if the telegram had been of such a kind that mental anguish would have resulted from the failure to promptly receive, transmit or deliver.